**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donald H. BERRY, Gregory A. Stripling
and Robert Walser,
Defendants-Appellants.**

No. 80–7233.

United States Court of Appeals,
Fifth Circuit.
Unit B

May 11, 1981.

Rehearings Denied June 24, 1981.

Thomas M. Haas, J. D. Quinlivan, Jr., Mobile, Ala., for Berry.

Willis W. Holloway, Jr., Mobile, Ala., for Stripling.

Barry Hess, Virginia A. Johnston, Daniel L. McCleave, Mobile Ala., for Walser.

W. A. Kimbrough, Jr., U. S. Atty., E. T. Rolison, Jr., Asst. U. S. Atty., Mobile, Ala., for plaintiff-appellee.

Before GODBOLD, Chief Judge, MORGAN and HENDERSON, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Appellants, Donald H. Berry, Gregory A. Stripling, and Robert Walser, were convicted of engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1) and § 924(a),[1] and conspiracy to engage in the business of dealing in firearms without a license in violation of 18 U.S.C. § 371.[2] Defendants were each convicted of one count of conspiracy in addition to two counts under the substantive offense based on two different transactions. Defendant Berry challenges on appeal the lower court's rulings limiting cross-examination of a government witness and permitting the admission of testimony involving a conversation between the defendant and a government undercover agent. Defendants Stripling and Walser challenge both the admission of the out-of-court conversation between their coconspirator and the undercover agent and the sufficiency of the evidence supporting their convictions. Having examined the record and the applicable law, we affirm all three convictions.

## I. FACTS

Because of the claims of two of the defendants challenging the sufficiency of the

---

1. The language of 18 U.S.C. § 922(a)(1) provides as follows:

   (a) It shall be unlawful—

   (1) for any person, except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms or ammunition, or in the course of such business to ship, transport, or receive any firearm or ammunition in interstate or foreign commerce;

   . . . . .

   The penalties for violation of the above section are provided in 18 U.S.C. § 924 as follows:

   (a) Whoever violates any provision of this chapter or knowingly makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter, or in applying for any license or exemption or relief from disability under the provisions of this chapter, shall be fined not more than $5,000, or im-

   prisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine.

2. The general conspiracy provision is provided in 18 U.S.C. § 371 as follows:

   Conspiracy to commit offense or to defraud United States

   If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

   If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

evidence, we must elaborate in detail on the factual background of the case. In June of 1979 Special Agent Ronald T. Baughn of the Alcohol, Tobacco and Firearms Division of the Department of Treasury posed as a pawn shop operator from Mississippi named Gene Fisher.[3] He met a man named James E. Barnes in the Fish River area of Mobile, Alabama in Baldwin County, and sold him a large industrial-type battery for a reasonable price. Although the agent told Barnes that he wanted to trade batteries for guns, Barnes continued purchasing batteries on various occasions with cash because he had no guns to sell. Later Barnes went to defendant Stripling's house with one of the purchased batteries in the back of his truck, and Stripling inquired concerning where he had purchased the battery. Stripling needed similar batteries in order to operate his S & W Demolition business. Barnes told Stripling he would give him Fisher's (Agent Baughn's) phone number. Later Barnes informed Agent Baughn that Stripling might have some guns to trade for his batteries and would be in contact with him.

Defendant Stripling called Agent Baughn on July 30, 1979, and informed him that he was both aware of what Baughn wanted to trade for the batteries and that he had it. The two arranged a meeting the following day at Hardee's Hamburger Restaurant in Fairhope, Alabama. Agent Baughn went to the meeting with Special Agent Jerry L. McCaslin who posed as another pawn shop operator from Gautier, Mississippi. They met the defendants at a car at Hardee's and followed them to Stripling's residence in Fairhope. The agents showed Stripling six large batteries in his trunk before they all entered the house. Inside, defendant Berry sat for the most part quietly in a corner while defendants Stripling and Walser showed the agents a number of shotguns and rifles from a gun cabinet. Stripling also brought other guns from another part of the house. Walser and Stripling occasionally changed gun barrels on some guns, and once Berry directed Walser not to sell

one gun because it was registered on his Mexican hunting license. After some negotiation, through which defendant Berry was silent, Berry gave his final approval to a swap of five guns for five batteries plus $100. Defendants Walser and Stripling carried the guns to the agents' vehicle and unloaded the batteries from his trunk. Walser rejected one of the six batteries because of a crack in the top of it. Meanwhile, Agent McCaslin engaged in a private conversation with defendant Berry concerning future trades.

As a result of his conversation with Berry, Agent McCaslin and Special Government Employee Jack Traylor, a pawn shop operator from Mississippi, went to Berry's fish camp houseboat on August 2, 1979, wired with recording devices. The purpose of the meeting was ostensibly to discuss the ground rules for doing business. During the course of the conversation Berry made several incriminating statements concerning his dealing in firearms and his association with the codefendants. In addition to making reference to forty or fifty handguns he had buried and available for sale, Berry alluded to other criminal activity and associations and implicated his codefendants in the firearms selling scheme.

A second transaction began on September 2, 1979, when Agent Baughn spoke by telephone with Stripling, and they agreed to trade more batteries and oil for guns. On September 4, Baughn and Agent McCaslin returned to Stripling's residence. Although all three defendants were present initially, defendant Berry departed after making a phone call. He left one gun for sale, stating that he wanted at least one or two batteries for it. After he left, the conversation was primarily with defendant Walser, and in addition to Berry's gun, the trade was made for calculators and a cash register. No separate substantive count was alleged by the government for this transaction, presumably because the sale involved only one gun of one defendant.

**3.** For convenience, Special Agent Baughn will hereinafter be referred to by his real name rather than the name Gene Fisher.

On October 3, 1979, upon the advice of Stripling, Agent Baughn called Berry and they agreed to a sale of sixteen to eighteen guns for cash, but the sale never took place. On October 18, 1979, Agent Baughn visited Stripling and told him that he was tired of fooling with Berry. They agreed to another deal involving the swap of eighteen guns for twenty drums of oil. On October 20, 1979, the agents delivered the oil to the Stripling residence where Stripling and Walser inspected it. Stripling told the agents that Berry was out getting the "stuff." Afterwards Stripling directed the agents to a restaurant where they found a parked car containing ten shotguns and rifles in the trunk. The agents removed the guns from the trunk and entered the restaurant with Stripling, where Walser later joined them. This transaction was the final sale activity before defendants were arrested and charged.

## II.  BERRY'S CLAIMS

Appellant Berry raises two issues on appeal: (1) whether the district judge improperly limited cross-examination of a key government witness, thereby prohibiting appellant's counsel from presenting the defense of occasional sale of firearms, and (2) whether the district court erred in admitting testimony of undercover agents concerning appellant's statements about other criminal activities.

In his first claim appellant contends that the trial judge's erroneous interpretation of the law along with his warning as to the consequences of eliciting certain testimony from a government witness inhibited him from presenting the valid defense of occasional sale. At trial the defense attorney, although mentioning the occasional sale defense, characterized this defense as an attempt to show unwillingness to deal in fire-

arms.[4] Appellant argued that because willingness to deal is an element of the crime, a proper defense could include cross-examination as to that matter without raising the specter and consequences of an entrapment defense. Appellant's counsel now suggests that the trial judge failed to recognize the defense of occasional sale, and inhibited his defense of the case by warning that any testimony elicited concerning the agent's encouragement to commit the crime would open the door to entrapment and permit the government to introduce evidence of predisposition.

■ Contrary to appellant's argument, the trial judge explicitly acknowledged the defense of occasional sale, but viewed defense counsel's strategy as a backhanded attempt to defend on the ground of entrapment without permitting the government to show predisposition. It is true that the government must prove both willingness to deal and more than an occasional sale in order to prove the status of the accused as one engaged in the business of dealing in firearms. *See United States v. Wilmoth*, 636 F.2d 123 (5th Cir. 1981). *See also United States v. Masters*, 622 F.2d 83 (4th Cir. 1980); *United States v. Huffman*, 518 F.2d 80 (4th Cir. 1975). However, the test in the fifth circuit for determining whether an accused is engaged in the business of dealing in firearms is whether he has guns on hand or is ready and able to procure them for the purpose of selling them from time to time to such persons as might be accepted as customers. *United States v. Shirling*, 572 F.2d 532, 534 (5th Cir. 1978). *See United States v. Wilmoth, supra*, 636 F.2d at 125. It is according to this test that we consider the present case.

■ Under our standard the government must prove willingness to deal at some time prior to the transaction. When the defendant attempts to show unwillingness to deal

---

**4.** Defense counsel's apparent confusion or lack of clarity in this matter most likely is a result of the fourth circuit's language in *United States v. Huffman*, 518 F.2d 80 (4th Cir.1975), the case on which counsel relied for his argument. In that case the court stated that "while the Government need not prove an actual profit from sales of firearms, it must show a willing-

ness to deal, a profit motive, and a greater degree of activity than occasional sales by a hobbyist." *Id.* at 81. Counsel in his argument at trial argued that the defendant has the right to show unwillingness to deal, but on appeal attempts to characterize this as an occasional sale defense.

*until encouraged by the government agents,* the defendant is not merely defending against proof of willingness, but is presenting a defense of entrapment that permits the government the opportunity to rebut the defense with evidence of predisposition. In this case defense counsel was attempting to show encouragement by the government to demonstrate the unwillingness of the defendant to deal. The trial judge was correct in his statement of warning to the defense counsel, and the attorney's limited cross-examination pursuant to the warning was a matter of defense strategy not subject to review by this court.

■ Appellant's second objection is to the introduction into evidence of his conversation with two of the government undercover agents. We hold that the testimony was properly admitted under Federal Rule of Evidence 404(b).[5] Our test for admission of extrinsic evidence is set out in *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978). The two-step test requires, first, that the evidence of an extrinsic offense must be relevant to an issue other than the defendant's bad character, and second, that the probative value must not be substantially outweighed by undue prejudice to the defendant. *Id.* at 911–12. In the present case the evidence of the conversation was admissible to show the plan, scheme or design for the charged offenses. According to the testimony of the agent, the defendant discussed his dealings in firearms at length, explaining the manner in which he preferred to deal and with whom. The testimony assisted the jury in understanding the plans and schemes of the firearms sale conspiracy, and the probative value was not outweighed by the possible prejudice the jury might develop against the defendant.

### III. STRIPLING'S & WALSER'S CLAIMS

Both appellants Stripling and Walser appeal their convictions on the grounds, first,

that the conversation between defendant Berry and the government agents was improperly admitted against them as an out-of-court statement made by an alleged coconspirator, and second, that the evidence was insufficient to support their convictions. In their first claim appellants contend that the trial court erroneously concluded after an appropriate *James* hearing that substantial, independent evidence existed to support a finding of conspiracy and permit admission of the statements made in furtherance of the conspiracy.

Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that a statement is not hearsay if it is offered against a party and is a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The court in *United States v. James*, 590 F.2d 575 (5th Cir. 1979), held that the judge must make an initial determination of the admissibility of such evidence by determining if "there [is] substantial, independent evidence of a conspiracy, at least enough to take the question to the jury." *Id.* at 580–81. At the conclusion of the trial and upon proper motion, the judge must reconsider and determine whether the prosecution has shown by a preponderance of the evidence that a conspiracy existed, the party against whom the statement was offered was a member of the conspiracy, and the statement was made during the course and in furtherance of the conspiracy. *Id.* at 583. *See United States v. Grassi*, 616 F.2d 1295, 1300–01 (5th Cir. 1980).

■ Upon review of the record, we find that the district judge did not err in his conclusion that substantial, independent evidence existed to support a finding of conspiracy. Two agents testified as to meetings on at least two occasions at which all three defendants participated in the dealing

---

5. Federal Rule of Evidence 404(b) provides as follows:

(b) *Other crimes, wrongs or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

of firearms. Although defendant Walser makes a special plea that the evidence as to his participation in the conspiracy was insufficient to permit admission of the statement against him, we find the evidence was sufficient and uphold the introduction of the statements into evidence as against both defendants.

Appellants further argue that the harm resulting from the prejudicial effect of the statements as to themselves outweighed the probative value. We find this claim also without merit. The statements demonstrated the plan or scheme used by the defendants in dealing in firearms. These statements in furtherance of the conspiracy were significant in probative value. The trial judge gave cautionary instructions limiting the jury's consideration of any statements which were not in furtherance of the conspiracy, thereby guarding against the possibility that these two defendants could be convicted because of other criminal acts of defendant Berry. The decision of the trial judge denying appellants' motions for severance was within his discretion and may not be overturned except for abuse of discretion. We find that the trial judge properly overruled the appellants' objections to the admission of defendant Berry's out-of-court statements and acted within his discretion in denying their motions for severance.

■ Appellants' final claim on appeal is a challenge to the sufficiency of the evidence supporting their convictions. The standard of review as to the sufficiency of the evidence, under *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), is whether, taking the view most favorable to the government, substantial evidence exists to support the verdict. More specifically, the test in the fifth circuit is whether reasonable minds could have found the evidence inconsistent with every reasonable hypothesis of innocence. *See United States v. Newman*, 628 F.2d 362, 366 (5th Cir. 1980). Considering the evidence as presented in the facts above, we hold that the evidence was sufficient to support the verdicts as to both defendants on both the substantive and conspiracy counts.

Defendant Stripling made the initial contact with the government agents, indicating his willingness to trade firearms for batteries. He was present at all three meetings between the defendants and government agents, and participated in the firearms transactions. In particular, at the July 31 meeting, Stripling brought several guns from a separate part of the house, and according to the agents, offered them for sale. Stripling was also the key figure in directing the October 20 transaction. These actions along with the properly admitted out-of-court statements of defendant Berry indicated his guilty participation in both the substantive and conspiracy offenses.

■ Although defendant Walser's complicity in the firearm dealings is less obvious than that of the other two defendants, we find the evidence sufficient to support his conviction for the conspiracy offense and at least for aiding and abetting in the substantive offense. Although an agreement between the conspirators and the defendant is an essential element of the conspiracy conviction, the agreement may be inferred from the concert of action. *See United States v. King*, 532 F.2d 505, 508 (5th Cir. 1976). Walser's actions at the meetings between the defendants and the government agents along with the out-of-court statements of defendant Berry provided sufficient evidence to indicate his participation in the conspiracy to deal in firearms. As to his conviction under the substantive counts, Walser removed guns from a gun cabinet, changed the barrels and offered them for sale, according to the government agents' testimony. In *United States v. Newman, supra*, 628 F.2d at 366, we found that the defendant's removal of a gun from a gun rack and his handing of it to his employer was sufficient to justify his conviction for aiding and abetting. Thus, defendant Walser's actions at the July 31 meeting were clearly sufficient to justify a conviction. Similarly, at the October 20 meeting, he along with defendant Stripling inspected the goods to be traded for the guns and drove a government agent to the

restaurant where the weapons deal had taken place. Although the evidence against Walser was less than the evidence against either Berry or Stripling, there was sufficient evidence to enable the jury to find beyond a reasonable doubt, excluding every reasonable hypothesis of innocence, that he knew of and participated in the conspiracy and substantive offense of dealing in firearms. Based on the foregoing analysis, the convictions of all three defendants are

AFFIRMED.