**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Howard Kenneth BULMAN, Jr., L. C. Jones, a/k/a "L. C. Smith", Alex Howard, Jr., Robert Eugene Row, Defendants-Appellants.**

**No. 80–5710.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 18, 1982.

Rehearing Denied March 26, 1982.

---

Larry M. Roth, Rumberger, Kirk, Cald-well & Cabaniss, Orlando, Fla., for Bulman.

H. Jay Stevens, Asst. Fed. Public Def., Orlando, Fla., for Jones.

John M. Robertson (Court-appointed), Orlando, Fla., for Howard.

Bryan C. Hugo (Court-appointed), Long-wood, Fla., for Row.

Robert A. Leventhal, Orlando, Fla., for plaintiff-appellee.

Before TUTTLE, HILL and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Jack Rece, a convicted drug smuggler turned Drug Enforcement Agency (DEA) informant, met appellant Alex Howard, a prison acquaintance, by chance and indicated that he was again engaged in drug smuggling. Rece later received a telephone call from Howard and agreed to meet with him. At the meeting, held on May 10, 1979, Howard claimed to know people interested in contacting a pilot who would be willing to fly marijuana into the United States. Rece stated that he was intending, if he could secure adequate financing, to fly a DC–3 plane load of marijuana into this country. Resuming their discussion the next day, the two began exploring specific plans and financing for the proposed illegal importation. They continued their discussions at a meeting on May 16, now joined by, among others, DEA undercover agent Charles Fagan and appellants Robert E. Row and L. C. Jones. Following the May 16 meeting, all those attending but Jones flew to South Carolina to inspect Rece's proposed landing site. Defendant Jeff Lloyd joined the conspiracy on May 19 when he asked Rece and Fagan, at a meeting that included Row and Howard, for more time to obtain the funds necessary for purchasing the marijuana. Lloyd, accompanied by one "Kenny," appellant Howard K. Bulman, met Rece, Howard and Fagan again on May 21. The participants at that meeting discussed more operational and financial details of the proposed smuggling operation. "Kenny" (Bulman) inquired about the possibility of smuggling in three 5,000-pound loads of marijuana and stated that he would give Rece $20,000 in "upfront" money by noon on May 22. After receiving $12,000 at a meeting with Lloyd, Howard and Jones on May 23, Rece and Fagan, joined by Row, flew to South Carolina where Row was arrested. Following several telephone calls between DEA agents and appellants concerning arrangements for completing payment for the marijuana that supposedly had arrived, the remaining appellants were arrested on the 25th at a motel room in South Carolina. Howard, Jones, Bulman and Row were convicted below for conspiracy to import marijuana, in violation of 21 U.S.C.A. §§ 952(a) and 963; and for conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C.A. §§ 841(a)(1) and 846.[1] They appeal.

## I. SUFFICIENCY OF THE EVIDENCE

Bulman and Jones argue that the evidence introduced at trial was insufficient for their convictions. Because each raises issues peculiar to his own case, we consider the arguments of each individually below. Common to the arguments each makes, however, is our standard of review. Our general standard of review concerning the sufficiency of the evidence is to determine whether, looking at the evidence in the light most favorable to the government, the jury necessarily must have entertained a reasonable doubt concerning the guilt of an appellant. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Miller*, 664 F.2d 826, 828 (11th Cir. 1981). The former Fifth Circuit has elaborated on that standard in the particular context of conspiracy convictions, noting that we must find "substantial evidence" connecting an appellant to a conspiracy, *United States v. Malatesta*, 590 F.2d 1379, 1381 (5th Cir.) (en banc), *cert. denied sub nom. United States v. Bertolotti*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 77 (1979).[2] In determining whether there was

---

**1.** Three defendants at trial below, Willie Combs, John Frank and Jeff Lloyd, are not among appellants. The trial court granted Combs' motion for judgment of acquittal and the jury found Frank not guilty. Lloyd, though found guilty, did not appeal.

**2.** The Eleventh Circuit has adopted the case law of the former Fifth Circuit as its governing body of precedent. This precedent is binding unless and until overruled or modified by this Court en banc. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209–11 (11th Cir. 1981) (en banc).

such evidence, the former Fifth Circuit has noted that mere association with persons involved in a criminal enterprise is insufficient to prove participation in a conspiracy, see, e.g., United States v. DeSimone, 660 F.2d 532, 537 (5th Cir. 1981); United States v. Horton, 646 F.2d 181, 185 (5th Cir. 1981), and that mere presence at the scene of the crime is not enough to sustain a conspiracy conviction. See, e.g., DeSimone, supra, 660 F.2d at 537; United States v. Reyes, 595 F.2d 275, 280 (5th Cir. 1979). Rather, "we must be satisfied ... that these appellants had 'the deliberate, knowing, specific intent to join the conspiracy.'" DeSimone, supra, 660 F.2d at 537 (quoting United States v. Morado, 454 F.2d 167, 175 (5th Cir.), cert. denied, 406 U.S. 917, 92 S.Ct. 1767, 32 L.Ed.2d 116 (1972)).

## A. Appellant Bulman's Arguments

 Bulman raises several issues that depend ultimately upon the sufficiency of the evidence for his conviction. He asserts that the district court should have granted his motion for judgment of acquittal, that the evidence was insufficient to convict him either of conspiracy to import marijuana or of conspiracy to possess with intent to distribute and to distribute marijuana, and that the court should have instructed the jury to disregard statements referring to "Kenny." We reject all of his arguments.

The crux of Bulman's arguments is his assertion that the government never explicitly identified him as the "Kenny" who was present at the May 21 conspirators' meeting and so never linked him to the conspiracy. In particular, Bulman asserts that the government never identified him as the Kenny who was present at the May 21 meeting at which the participants discussed critical elements of the smuggling operation.[3] Substantial circumstantial evidence, however, identifies Bulman as Kenny. A DEA agent at trial identified Bulman as an individual he saw on May 21 outside the motel at which the conspirators, including Kenny, met. Kenny was the individual who agreed to obtain the money to pay for the marijuana; the money Rece and Fagan received on May 23 was in the envelope of a business for which Bulman was authorized to write checks. A telephone number at which Kenny could be reached, which appellant Howard gave a DEA undercover agent, was for a motel room rented in Bulman's name. Kenny advised a DEA agent on May 25 that he would fly to Columbia, South Carolina, that morning. Bulman arrived in Columbia later in the morning on the 25th. Finally, the agent who had talked to Kenny over the telephone identified Bulman as the man to whom he had talked on the telephone.[4] A jury, considering the above evidence, reasonably could conclude that Bulman and Kenny were the same person and that Bulman was a participant in the conspiracy to import marijuana. The district court did not err in denying the motion for judgment of acquittal or in refusing to instruct the jury to disregard references to Kenny in considering the evidence pertaining to Bulman.

 Bulman also contends that, even if there was sufficient evidence to support a conviction for conspiracy to import marijuana, the evidence was insufficient to prove conspiracy to possess with intent to distribute and to distribute. There is no evidence, Bulman asserts, that he ever discussed distribution or that he was involved in arrangements to unload the plane. The very

---

**3.** At a preliminary hearing the district court held to determine whether statements of coconspirators were admissible against defendants, Rece identified Bulman as the Kenny at the May 21 meeting. He did not, however, do so at the trial itself.

**4.** Bulman argues that because the DEA agent making the identification did not do so at the time of Bulman's arrest or in his written report the identification should be disregarded. Such a delayed identification might only undermine the credibility of the identification; "[c]redibility determinations are the province of the jury, not of this Court." United States v. Miller, 664 F.2d 826, 828 (11th Cir. 1981). Bulman also contends that, even if the identification is accepted, there is no proof that the Kenny to whom the agent talked on the 25th was also the Kenny at the May 21 meeting. We believe that a jury reasonably could infer that the Kenny to whom the agent talked was also the Kenny at the May 21 meeting, and that Bulman was that Kenny.

amount of the drug to be imported can, however, show intent to distribute. *United States v. Perry*, 480 F.2d 147, 148 (5th Cir. 1973). The size of the expected load, 5,000 pounds, and his question concerning the possibility of importing three such loads provided a jury with reasonable basis for concluding that Bulman was guilty of conspiracy to possess with intent to distribute.

### B. Appellant Jones' Arguments

Jones' argument that there was insufficient evidence for his conviction rests largely on whether we uphold the ruling of the district court that the statements of coconspirators were inadmissible against him. We therefore begin by considering the admissibility of coconspirators' statements against Jones.

■ Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not excludable as hearsay if offered against a party and made "by a coconspirator of the party during the course of and in furtherance of the conspiracy." The former Fifth Circuit in *United States v. James*, 590 F.2d 575 (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), has explained how to apply that rule, holding that, if the party against whom the statement is introduced objects to the use of the evidence, the court should determine whether substantial evidence, independent of the statements to be introduced, shows the existence of a conspiracy to which the party belonged. In this case the trial court held a hearing to determine whether coconspira-

tors' statements were admissible under *James*. The court ruled that they were admissible against all defendants but Jones. The government contests the correctness of the ruling concerning Jones. The trial court's determination is a finding of fact that we can overturn only if clearly erroneous. *United States v. Perry*, 624 F.2d 29, 30–31 (5th Cir. 1980).

■ The evidence of Jones' participation in the conspiracy is his presence at meetings on May 16 and 25 at which financial and operational details of the smuggling operation were discussed, his departure for South Carolina with several other defendants, his staying at rooms with them, and his travelling to a local airport with another defendant to pick up Lloyd and Bulman. Jones, stating that he never talked at a meeting, provided no money, was merely travelling north to Atlantic City, and only intended to show the co-defendant the way to the local airport, asserts that the evidence, though admittedly showing that he knew of the conspiracy, did not show that he joined in it. We agree. Although we might find the coconspirators' statements admissible against Jones if deciding the matter without a prior ruling by the court below, we are not, after a review of the record, left with the "definite and firm conviction that a mistake has been committed," *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), that makes it necessary to overturn the district court's determination as clearly erroneous.[5]

---

**5.** At the close of trial, the district court instructed the jury that "in determining whether any Defendant under consideration was a member of the conspiracy, if any, you should consider only the evidence of that Defendant's own acts and statements. He cannot be bound by the acts or declarations of other participants unless and until it is established beyond a reasonable doubt that a conspiracy existed and that he was one of its members." By this instruction, the court incorrectly gave the jury the right to consider and overturn his own ruling that the statements of coconspirators were inadmissible against Jones. The instruction was not a correct statement of the law. Although the rule in the former Fifth Circuit at one time allowed the jury to consider whether to allow coconspirators' statements into evi-

dence, *see United States v. Apollo*, 476 F.2d 156 (5th Cir. 1973), the former Fifth Circuit overturned that rule in *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). The former Fifth Circuit has on occasion refused to reverse a court erroneously instructing a jury that it could decide whether coconspirators' statements were admissible, *see United States v. Noll*, 600 F.2d 1123, 1128 (5th Cir. 1979), but only when a court already had ruled coconspirators' statements admissible, since in such cases a defendant would have been given a second opportunity to have the evidence excluded. Such was not the case here since the trial court had already excluded the evidence against Jones.

Without the statements of coconspirators available as evidence against Jones, we find, as the government seems to concede, that the jury must necessarily have entertained a reasonable doubt about his guilt. We reverse Jones' conviction.[6]

## II. THE FAILURE OF THE DISTRICT COURT TO RECONSIDER ITS INITIAL RULING ADMITTING COCONSPIRATORS' STATEMENTS AGAINST BULMAN

■ Bulman next asserts that the district judge erred in failing to reconsider his initial *James* ruling at the end of trial and decide whether a preponderance of the independent evidence introduced at trial sufficiently connected him with the conspiracy. *James*, he asserts, requires such a redetermination. His conviction, he argues, therefore should be reversed. We disagree. Bulman never made a motion to have the district court reconsider its initial determination that the coconspirators' statements were admissible against him. *James* itself states that a court need only reconsider its initial determination on proper motion by a defendant. *See* 590 F.2d at 582; *see also United States v. Berry*, 644 F.2d 1034, 1038 (5th Cir. 1981); *United States v. Ricks*, 639 F.2d 1305, 1310 (5th Cir. 1981).[7] In any event, since we have held that there was sufficient evidence to connect Bulman to the conspiracy, any error by the court in failing explicitly to state that it found that the *James* requirements were met would be harmless.

## III. SEVERANCE OF BULMAN'S TRIAL

■ Bulman also contends that his trial should have been severed from that of the other defendants. He bears the burden of showing specific and compelling prejudice that would warrant reversal of the district court for abuse of its discretion in deciding whether to sever. *United States v. Hewitt*, 663 F.2d 1381, 1390 (11th Cir. 1981); *United States v. Ocanas*, 628 F.2d 353, 359 (5th Cir. 1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981); *United States v. Wolford*, 614 F.2d 516, 518 (5th Cir. 1980).

Bulman admits that there was no specific and compelling instance of prejudice at his trial. He argues, however, apparently inviting this Court to change its reviewing standard, that a combination of factors, taken together, required severance. We see no reason to change our standard of review. Moreover, his claims are without merit.. Bulman begins by baldly asserting that the evidence showed two conspiracies, with the first, ending May 19, having nothing to do with him. He does not support his assertion and our own examination of the record indicates to us that there was only one conspiracy to import and distribute marijuana, which Bulman did not join until May 21. Bulman also asserts that his defense was not consistent with that of other defendants: the others asserted that their only agreement was with a government agent, which they asserted was not a crime, while Bulman's defense was that he was a

---

**6.** Given our disposition of Jones' contention that the evidence was insufficient for his conviction, we need not reach his contentions that the district court should have granted his motion to sever, that the court should not have allowed Jones' prior drug convictions into evidence, and that the introduction of evidence seized in the motel room where Jones was arrested violated his Fourth Amendment rights.

**7.** Bulman cites two cases, *United States v. Mesa*, 660 F.2d 1070, 1074 (5th Cir. 1981), and *United States v. Grassi*, 616 F.2d 1295, 1300–01 (5th Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980), stating that a judge should review the evidence at the end of trial and mentioning no need for defendants to make

a motion for reconsideration. In those cases, however, the absence of a motion was not in issue; the courts therefore would have felt no need to mention that a motion was required. Those cases do not hold that no motion is necessary. Nor do we agree with Bulman's assertion that merely making a motion for judgment of acquittal should be sufficient to force a judge to reconsider the sufficiency of the evidence connecting a defendant to a conspiracy. The function of a motion for judgment of acquittal is to test whether the evidences and inferences from it are inconsistent with every reasonable hypothesis of innocence, see, e.g., *United States v. Hitsman*, 604 F.2d 443, 446 (5th Cir. 1979), not to question the admissibility of certain evidence.

party to no agreement at all. Bulman does not explain the inconsistency between his defense and that of the others, nor does he show how the differences in the defenses prejudiced him. That others were asserting that they had made agreements, of whatever kind, did not contradict Bulman's assertions that he was a party to no agreement himself, regardless of what agreements the others may have had. Bulman's final assertions are that the joint trial prevented his use of certain evidence, though he gives no particular examples, and that the evidence of other defendants' involvement with drugs prejudiced him. Again, he does not explain the nature of the harm to his case and we can find no significant prejudice. The district court did not abuse its discretion in refusing to sever his trial.

## IV. ADMISSION OR EXCLUSION OF EVIDENCE

Appellants dispute two decisions of the district court concerning the admission or exclusion of evidence. Howard and Row assert that the district court should have allowed them to cross-examine DEA informant Rece on his arrest record. Howard contends that the court should not have allowed Rece to testify concerning a conversation with Howard about smuggling cocaine into the United States. We consider appellants' arguments below.

### A. Refusal to Allow Cross-examination on DEA Informant's Arrest Record

Appellants at trial attempted to cross-examine DEA informant Rece on his arrests. When the government objected, the court excused the jury in order to inquire about the charges. After learning that most of the charges against Rece had been dropped and that Rece had "no idea" about the DEA's involvement in dropping the charges, the court sustained the government's objection. Appellants Howard and Row contend that the district court erred in refusing to allow them to cross-examine Rece on his arrest record in order to show bias.[8]

Once a defendant's constitutional right to cross-examination has been met, as we believe was the case here,[9] our standard for reviewing is whether the district court abused its discretion in limiting cross-examination after weighing the probative value of the evidence against the risks of prejudice. *United States v. Diecidue*, 603 F.2d 535, 551 (5th Cir. 1979); *United States v. Bass*, 490 F.2d 846, 858 n.12 (5th Cir. 1974).

Appellants contend that the introduction of evidence concerning Rece's earlier arrests was critical to their attempt to show to the jury that Rece may have made a deal with the DEA. Although we believe that it might have been better to allow the cross-examination, we do not believe the trial judge abused his discretion in refusing to do so. In *United States v. Ramirez*, 622 F.2d 898 (5th Cir. 1980), the former Fifth Circuit ruled that, since defendants had the opportunity to ask a witness about promises the government had made, the trial court did not abuse its discretion in refusing to allow the defense to ask whether the witness had been indicted. Similarly, in this

---

8. Fed.R.Evid. 404(b) makes evidence of crimes admissible for purposes such as proof of motive, though the evidence is inadmissible for proof of character.

9. A defendant's right adequately to cross-examine a witness is, of course, guaranteed by the Sixth Amendment. *See, e.g., Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *United States v. Mayer*, 556 F.2d 245 (5th Cir. 1977). Moreover, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right to cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974). The

former Fifth Circuit has, indeed, noted that this right is particularly important if there exists a possibility that a witness may have made, or believed he had made, a deal with the government. *United States v. Onori*, 535 F.2d 938, 945 (5th Cir. 1976). A judge must, therefore, meet constitutional standards for permitting cross-examination before we evaluate his decision under the standard of abuse of discretion. We hold that, in this case, the court met constitutional requirements for permitting cross-examination. As we note in text, the court permitted appellants to question Rece extensively about his employment by the DEA, even though they were not permitted to follow a particular avenue of inquiry.

case, appellants had the opportunity to ask Rece about his prior convictions, his employment by the DEA, the duration of his employment, the manner and amount of his compensation, and the cases on which he had worked. Since appellants had adequate alternative opportunities to delve into whether there existed any deal between Rece and the DEA, or into whether Rece believed there existed any deal, the trial court did not abuse its discretion in refusing to allow inquiry into Rece's arrest record.

### B. Admission of a Conversation by Howard Concerning the Importation of Cocaine

▪ The district court allowed the government to question DEA informant Rece during rebuttal concerning a conversation with Howard about smuggling cocaine into the country. As with the district court's limitation of the cross-examination of Rece, our standard of review is abuse of discretion. *United States v. Beechum*, 582 F.2d 898, 915 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

▪ The government may introduce evidence of extrinsic offenses if relevant to an issue other than the defendant's character[10] and if its probative value is not substantially outweighed by its prejudice. *Id.* at 909–15. The government contends that the extrinsic offenses were relevant to proving Howard's intent to enter and participate in the conspiracy.[11] Howard asserts, however, that the evidence was not admissible as proof of intent because he never contended or inferred that he did not intend to enter into a conspiracy. Rather,

he only contended that his conspiracy was solely with DEA informant Rece which, he asserts, would not be a crime. We disagree with Howard's assertion that the judge could not admit the evidence as proof of intent. The former Fifth Circuit held in *United States v. Roberts*, 619 F.2d 379, 382–83 (5th Cir. 1980), that, because of the "unique nature of conspiracy charges," *id.* at 383, and the difficulty of proving the necessary elements of intent to join and knowledge of a conspiracy, a not guilty plea alone renders defendant's intent a material issue unless the defense affirmatively takes intent out of the case. In this case the trial court initially ruled, on Howard's motion *in limine*, that the prejudice of the evidence outweighed its probative value and excluded it, though stating that it would reconsider its holding if the government so moved later during trial after the court had had the opportunity to evaluate the other evidence on intent. The government later did move to introduce the testimony on the cocaine importation conversation. The court stated that it would allow the testimony to be introduced only if Howard refused to stipulate that he was not contesting his intent to join a conspiracy. Howard explicitly stated that he would not take the issue of intent out of the case. The trial court did not err in then ruling that the testimony was admissible.[12]

## V. FAILURE TO EXCLUDE EVIDENCE SEIZED AT HOWARD'S ARREST

Howard contends that police violated his Fourth Amendment rights when they entered the South Carolina motel room to

---

10. *See* Fed.R.Evid. 404(b).

11. The former Fifth Circuit has noted in the past that arguably conversations about the importation of drugs during the course of a conspiracy to import a different drug are admissible as part of the background of facts surrounding the crime charged. *United States v. Bloom*, 538 F.2d 704, 706 (5th Cir. 1976), *cert. denied*, 429 U.S. 1074, 97 S.Ct. 814, 50 L.Ed.2d 792 (1977). Although the conversation between Rece and Howard might be admissible on that basis, we need not reach the point given our holding that the conversation was admissible as proof of intent.

12. Howard notes that the government elicited the testimony at issue from Rece during rebuttal, though it rebutted no statements introduced by Howard. A trial court, however, has discretion to admit on rebuttal evidence that would have been admissible during the case in chief. A defendant will suffer prejudice only if he has no opportunity to controvert the newly introduced evidence. *United States v. Sadler*, 488 F.2d 434, 435 (5th Cir.), *cert. denied*, 417 U.S. 931, 94 S.Ct. 2642, 41 L.Ed.2d 234 (1974). Howard does not allege prejudice nor can we, on examining the record, discover any.

arrest him.[13] The district court, he argues, therefore erred in failing to exclude certain evidence in plain sight in the motel room or on appellants' persons. As support for his contention Howard cites *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). In *Payton* the Supreme Court, considering the strong privacy interests of an individual in his home and historical traditions based on the common law, ruled that police, absent exigent circumstances, could not enter an individual's home to arrest that individual unless they had a warrant.[14]

The district court realized the relevance of *Payton* but ruled that the case was distinguishable because the arrest at issue occurred in a motel room rather than in someone's home. A mere recitation of the difference between the places in which an arrest occurred does not, of course, pronounce relevant Fourth Amendment distinctions. The Supreme Court in *Katz v. United States*, 389 U.S. 347, 349–50, 88 S.Ct. 507, 510, 19 L.Ed.2d 576 (1967), rejected a formulation of the scope of Fourth Amendment safeguards that would depend merely upon the place in which an alleged violation of a defendant's constitutional rights occurred. The Supreme Court has, indeed, several times specifically stated that an individual does not forfeit his Fourth Amendment protections merely because he is residing in a hotel room. *See Hoffa v. United States*, 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966); *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *Lanza v. New York*, 370 U.S. 139, 143, 82 S.Ct. 1218, 1220, 8 L.Ed.2d 384 (1962). The appropriate approach, rather, is to determine Howard's legitimate expectation of privacy in the motel room. *See Katz, supra; Rakas v. Illinois*, 439 U.S. 128,

99 S.Ct. 421, 58 L.Ed.2d 387 (1978). If we find that expectation identical to that which he would have in his home, then we must hold *Payton* applicable here.[15]

Not in all circumstances would we equate the reasonable expectation of privacy of an individual in a motel room with that of an individual in his own home. The former Fifth Circuit has in the past explicitly distinguished privacy expectations of a motel occupant from those of a motel owner because of the "element of public or shared property in motel surroundings that is entirely lacking in the enjoyment of one's home." *Marullo v. United States*, 328 F.2d 361, 363 (5th Cir.), *cert. denied*, 379 U.S. 850, 85 S.Ct. 93, 13 L.Ed.2d 53 (1964). Cases in which the Court has upheld a distinction, however, have depended upon occurrences of searches or seizures in the public areas of a motel. Thus in *Marullo* the Court upheld the use of evidence discovered in the warrantless search of a crawl space under a motel cabin. Similarly, in *United States v. Jackson*, 588 F.2d 1046, 1050–55 (5th Cir.), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979), the Court, "[i]n view of the open, public, and shared atmosphere of a motel, the nearness of one's neighbors, and the prevalence of uninvited listeners in human society," *id.* at 1052, upheld the introduction into evidence of conversations that government agents overheard while in a room adjoining that of defendants. The seizure of Howard, however, differs from the searches involved in *Marullo* and *Jackson* because it did not occur in any public part of the motel or arise as a result of actions on his part that extended beyond the walls of his room. Rather, it occurred in a room that Howard had rented and in which at least some appel-

---

13. Howard does not contest the validity of the searches if we uphold the warrantless entry into the motel room.

14. No other appellant but Jones, whose arguments we need not consider because of our disposition of his case on other grounds, raises a Fourth Amendment argument. We therefore need not reach the issue of whether other appellants had a legitimate expectation of privacy in a motel room rented in Howard's name.

15. The government cites two cases, *United States v. Cueto*, 611 F.2d 1056 (5th Cir. 1980), and *United States v. Avila-Dominguez*, 610 F.2d 1266 (5th Cir.), *cert. denied sub nom. Perez v. United States*, 449 U.S. 887, 101 S.Ct. 242, 66 L.Ed.2d 113 (1980), that it feels establish the holding that a warrant is unnecessary in order to enter a motel room to arrest an individual. These cases, however, were decided prior to *Payton* and must be evaluated in light of the Supreme Court holding.

lants apparently had stayed overnight. The motel room was, however temporarily, equivalent to a home. Absent some applicable exception to the warrant requirement of *Payton*, the warrantless invasion of the motel room by law enforcement officials violated Howard's Fourth Amendment rights.

*Payton* does articulate an exception to its holding if exigent circumstances exist. The government argues, and the lower court ruled, that, even if a warrant generally would be necessary for police to enter the motel room, the ongoing conspiracy provides the necessary exigent circumstances for the warrantless entry and arrest. The government's argument is unpersuasive. There is no evidence that appellants were engaged in any activities in furtherance of the conspiracy, aside from waiting for Rece and Fagan, at the time the law enforcement officials entered the motel room to arrest them. Howard did not give up his Fourth Amendment rights during the entire time period in which a conspiracy he had entered was ongoing. In any event, even if appellants had been engaged in actions in furtherance of a conspiracy at the time of their arrest, we do not believe that the necessary exigent circumstances would have existed that would obviate the need for a warrant. In *United States v. Kreimes*, 649 F.2d 1185, 1192 (5th Cir. 1981), the former Fifth Circuit catalogued the conditions under which exigent circumstances exist: hot pursuit, a fleeing suspect, danger to an arresting officer or to the public, mobility of a vehicle, and mobility of evidence. The catalog indicates that the exigent circumstances doctrine is applicable only within the narrow range of circumstances that present a real danger to the police or the public or a real danger that evidence or a suspect might be lost. The circumstances of this case do not involve any of the situations adumbrated above. There was no danger that the suspects would flee, that police or public might be harmed, or that evidence would be destroyed. The DEA agents had adequate time and opportunity to obtain a warrant, and they should have done so.[16]

■ We hold that Howard's Fourth Amendment rights were violated when DEA agents entered the motel room without a warrant to arrest him. The district court's decision not to exclude evidence seized as a result of that illegal arrest was error. If we conclude, however, on examination of the record, that the erroneously admitted evidence was harmless beyond any reasonable doubt, a reversal is not mandated. *Chambers v. Maroney*, 399 U.S. 42, 53, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419 (1970); *United States v. Marcantoni*, 590 F.2d 1324, 1330–31 (5th Cir.), *cert. denied*, 441 U.S. 937, 99 S.Ct. 2063, 60 L.Ed.2d 666 (1979); *United States v. Hall*, 587 F.2d 177, 182 (5th Cir.), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2405, 60 L.Ed.2d 1065 (1979). We so conclude. The critical evidence in the conviction of Howard was the testimony of DEA agent Fagan and, in particular, of DEA informant Rece. That evidence clearly, repeatedly, and with overwhelming force connected Howard to the conspiracy. In light of that evidence, the probative weight of the items seized at the arrest and introduced at trial—pieces of paper with telephone numbers on them, a motel bill, and a business card—was minuscule.[17]

16. The district court also distinguished the facts at issue from those of *Payton* because in this case a DEA agent was "a coconspirator and a welcome visitor" of *Howard.* The court did not explain the legal significance of this finding, and we do not believe that it sustains the warrantless arrest. The finding might be relevant to a determination that Howard had consented to the warrantless entry, but the court made no finding that consent existed. In any event, although an agent who was a wel-

come visitor might have consent to enter a motel room without a warrant, the government did not show that any agent entering the room and arresting Howard was a "welcome visitor." That one agent was a welcome visitor does not mean that any agent could enter the motel room without a warrant.

17. Howard, indeed, never bothers to explain how the erroneously admitted evidence had any effect on his conviction.

We have reviewed the issues appellants raised. But for those of Jones, we find their contentions without merit and, on examination of the record, find the evidence sufficient for their convictions.

The conviction of appellant Jones is REVERSED. The convictions of all other appellants are AFFIRMED.

JAMES C. HILL, Circuit Judge, specially concurring:

I concur in this scholarly opinion. Consistent with my views expressed by special concurrence in *Harryman v. Estelle*, 616 F.2d 870, 878–80 (5th Cir.), *cert. denied*, 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980), I should not have decided the constitutional issue in part V. Whether error or not, the admission of the evidence was no cause for reversal. The constitutional adjudication was not required. I find no fault in what Judge Johnson has written for us. It is instructive, even if unnecessary.