UNITED STATES of America,
Plaintiff-Appellee,

v.

J. Maurice EDWARDS, Jr., and Zachary
R. Edwards, Defendants-Appellants.

No. 81–6177.

United States Court of Appeals,
Eleventh Circuit.

Jan. 31, 1983.

Certiorari Denied April 25, 1983.
See 103 S.Ct. 1884.

Anderson E. Hatfield, Gainesville, Fla., for defendants-appellants.

Thomas E. Morris, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, HENDERSON and CLARK, Circuit Judges.

PER CURIAM:

J. Maurice Edwards and his son Zachary Edwards were convicted in a jury trial in the United States District Court for the Middle District of Florida of conspiring to possess over 1,000 pounds of marijuana with intent to import and distribute and distribution of approximately one pound of marijuana. In addition, J. Maurice Edwards

was found guilty of violating 21 U.S.C. § 843(b)—use of a communication facility in facilitating the commission of the conspiracy. They appeal their convictions on all counts. Finding no error, we affirm.

In 1980, the Drug Enforcement Administration (DEA) initiated an investigation of an alleged drug importation conspiracy involving Dr. Raymond Wood, John Edward Sasko and others in Florida. Robert Hackney, a confidential informant, first met with Wood and Sasko and discussed the possibility of Hackney procuring a plane and flying to Colombia, South America to pick up a load of marijuana. Hackney and Wood then conferred with Benjamin Garcia and Alejandro Linero. At this meeting, Wood gave Garcia and Linero a package of money and informed Hackney that it was a down payment for marijuana. In his efforts to find a pilot acceptable to Wood and the others, Hackney introduced DEA undercover agent Charles Martinez to Wood and it was agreed that Martinez would fly the plane. The proposed Colombian trip was later aborted because of complications in planning. Hackney then volunteered to obtain the marijuana from his own source. On December 7, 1980, Hackney and Martinez flew into an airport in a plane loaded with previously confiscated marijuana. Sasko and others unloaded the marijuana into two cars. DEA agents arrested Sasko, Robert David Lawson and Michael Arthur McKinney as they attempted to leave the airport area. Subsequently, Wood, who was not arrested because he was not present at the airport, telephoned Hackney and told him that the original Colombian source of marijuana was ready for delivery and suggested that it could be unloaded at an airstrip "up north." Wood arranged to meet with Hackney and Martinez to inspect this potential landing site.

It was during the second stage of the conspiracy that the appellants made their entrance. Hackney and Wood met J. Maurice and Zachary Edwards in a restaurant parking lot in Gainesville, Florida.[1] They

---

1. We review these facts on appeal in the light most favorable to the government. *See Glas-*     *ser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed.2d 680 (1942).

went to the Gainesville airport to meet Martinez but did not see him. Wood could not wait, so he returned to the restaurant. Thereafter, Hackney and the Edwards waited at the airport for Martinez who was present all along, but in a different area. J. Maurice Edwards sent his son, Zachary, to procure some of their homegrown sinsemilla to show to Hackney.

While J. Maurice Edwards and Hackney were waiting for Martinez, they had a lengthy conversation which was recorded via a transmitting device attached to Hackney's body. The elder Edwards discussed the pitfalls of dealing in marijuana, the troubles he and several of his acquaintances had been involved in, airplanes, code names for marijuana and other drug-related terms and, in general, the precautions necessary to the drug importation business. An excised version of this recording was played before the jury at the trial.

After meeting with Martinez, Hackney, Martinez and J. Maurice Edwards proceeded to the Edwards' dirt air strip where they met Zachary. The men drove over the strip at high speeds to test it for safety. Procedures for unloading marijuana were reviewed by Hackney, Martinez and both Edwards. Zachary retrieved a sack of marijuana from the trunk of his car and gave it to Hackney. This marijuana was furnished to Hackney as a sample of the homegrown sinsemilla available from the Edwards. J. Maurice Edwards, Martinez and Hackney then returned to the Gainesville airport to view the plane that Martinez would pilot to bring the Colombian marijuana into Florida.

Over the next few weeks, J. Maurice Edwards had telephone conversations and meetings with Hackney and Wood regarding the importation of marijuana and Hackney's success in finding buyers for the Edwards' sinsemilla. Eventually, the operation was called off because J. Maurice Edwards suspected Hackney of being an informant.

The appellants assert three errors on appeal. First, they contend that the district court should not have admitted the tape of the conversation between J. Maurice Edwards and Hackney. Second, they argue that certain evidence about Hackney should have been admitted because it supported their defense. Finally, they complain of the district court's failure to investigate evidence of juror predisposition brought to the court's attention in their motion for a new trial.

During the trial, the appellants objected to the admission of the tape recording of the conversation between Hackney and J. Maurice Edwards at the Gainesville airport. They urge that this discussion constituted inadmissible evidence of extrinsic offenses for the purpose of proving Edwards' bad character. Fed.R.Evid. 404. The district court carefully considered the objection and excluded some portions of the tape because it found that its relevance was outweighed by the prejudicial impact. The court then permitted the government to broadcast the excised tape while the jury read a transcript of its contents.

The Edwards maintain that the tape failed to meet this circuit's test for admissibility under *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).[2] According to the appellants, the government failed to satisfy the threshold requirement of culpability in the commission of the extrinsic offense. They also argue that there was virtually no need for the tape because ample evidence to make out a prima facie case against them without the tape was admitted at the trial. Finally, the appellants say that J. Maurice Edwards' discussion about the extrinsic offenses of others cannot be admitted under *Beechum*.

■ Rule 404(b) of the Federal Rules of Evidence provides that:

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *Beechum* the former Fifth Circuit Court of Appeals interpreted Rule 404(b) to require a district court to conduct the following analysis:

First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by the undue prejudice . . . .

582 F.2d at 911. *See also, United States v. Terebecki,* 692 F.2d 1345 (11th Cir.1982). In determining relevancy, *Beechum* mandates a finding of sufficient evidence to prove that the defendant committed the offense. However, this requires only that the jury *could* find that the defendant committed the offense, "[t]he judge need not be convinced beyond a reasonable doubt that the defendant committed the extrinsic offense . . .". 582 F.2d at 913. *See also, United States v. Mitchell,* 666 F.2d 1385, 1389 n. 6 (11th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2943, 73 L.Ed.2d 1340 (1982). Finally, a district court's decision to admit extrinsic offense evidence will not be reversed absent a clear abuse of discretion. *United States v. Dothard,* 666 F.2d 498, 501 (11th Cir. 1982).

■ Applying the *Beechum* standards to Edwards' statements at the airport, we conclude that the district court did not err in admitting the abbreviated conversation. Edwards' discussion of his involvement in drug smuggling, precautions that must be observed, the use of aircraft, code names

for drugs and his homegrown marijuana clearly are relevant to prove his knowledge of drug importation and distribution, the subject of the charged conspiracy. Thus, the requirement that the evidence prove something other than bad character is met. Second, another component of relevancy set forth in *Beechum*—that a jury could find that the defendant committed the offense— is also evident. Even though the appellant insists that none of his statements were true and that he was only "puffing", he did admit these previous offenses in the recorded conversations. These admissions would justify a jury's finding that the appellant committed the extrinsic offenses. *United States v. Tunsil,* 672 F.2d 879, 881 n. 2 (11th Cir.1982). Finally, the probative value of the conversation was not outweighed by its prejudicial impact.[3] The tape recording in this instance aided the jury in evaluating Edwards' knowledge of importation schemes. The district court did not abuse its discretion in finding that the prejudicial impact of this evidence did not outweigh its relevance.

Edwards' recorded statements, revealing his knowledge of the illegal activities of others are the subject of a different analysis. These declarations are not subject to the *Beechum* Rule 404(b) test because the offenses were not alleged or shown to have been committed by Edwards. As the court stated in *United States v. Krezdorn,* 639 F.2d 1327 (5th Cir.1981):

[w]hen . . . the extrinsic offense was not committed by the defendant, the evidence will not tend to show that the defendant has a criminal disposition and that he can be expected to act in conformity therewith. . . . It would seem, therefore, that when extrinsic offense evidence is sought to be introduced against a criminal defendant, in order to trigger the applica-

---

**3.** In *United States v. Berry,* 644 F.2d 1034 (5th Cir.1981), an agent was permitted to testify about a conversation with the defendant. The agent stated that the defendant, who was charged with conspiracy to sell firearms, had told him how he dealt in firearms and with whom he preferred to do business, made reference to 40 or 50 firearms ready for sale and

alluded to other criminal activity. The court held that "[t]he testimony assisted the jury in understanding the plans and schemes of the firearms sale conspiracy, and the probative value was not outweighed by the possible prejudice the jury might develop against the defendant." *Id.* at 1038.

tion of Rule 404(b) there must be an allegation that the extrinsic offense was committed by the defendant.

*Id.* at 1333 (footnote omitted). Thus, because Rule 404(b) is not implicated, the statements would be admissible if they are relevant and their relevance is not substantially negated by their prejudicial effect. *See* Fed.R.Evid. 401–403. This part of the conversation was pertinent to show that J. Maurice had knowledge of the drug business—he knew that precaution was necessary because of problems encountered by his acquaintances. These disclosures imply that Edwards appreciated the dangers and wanted to impress Hackney that he (Edwards) would proceed with care. The admission of such statements did not constitute an abuse of discretion.

■ The second assignment of error challenges the district court's refusal to allow the testimony of Hackney's children and a salesman from whom Hackney had purchased a mobile home. On appeal, the Edwards argue that these witnesses would have supplied testimony corroborating their defense that Hackney gave the appellants a pound of sinsemilla. In particular, they claim that the Hackney children would have testified that their father kept marijuana under his bed and the mobile home salesman would have stated that Hackney provided the down payment for his home in cash and possessed a large amount of money at the time of the transaction.

Efforts were made to proffer this testimony on several occasions, including a motion in limine at the beginning of the trial and at the close of the government's case. The reasons now advanced by the Edwards for the admission of this evidence vary sharply with those presented to the district court. At the trial the testimony was offered essentially to impeach Hackney. For example, the argument was made that the testimony showing that Hackney was a drug dealer contradicted his stated motive for working for the DEA and repudiated his denial of involvement in drugs. On this basis, appellants contended that the testimony was admissible under Rule 404(b).

The district court excluded the testimony as extrinsic impeachment evidence, inadmissible under Rule 608(b).

■ "It is axiomatic that the trial court must be apprised of the purpose of any inquiry to which objection is made." *United States v. Garcia,* 531 F.2d 1303, 1307 (5th Cir.), *cert. denied,* 429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976). The trial judge permitted the appellants to state the purpose for the admission of the evidence at several stages in the trial. Despite these opportunities, they never asserted the theory they now advance here—that the testimony would support the substantive defense that Hackney gave to them the pound of sinsemilla. Even after the prosecution had rested its case and the risks involved in early disclosure of the defense had been overcome, the appellants did not proffer the testimony for any other reason than the impeachment of Hackney. Because they did not pursue this ground for admitting the testimony in the district court, they will not be heard to complain of its exclusion on appeal unless the district court's determination amounted to "plain error" affecting substantial rights. *Id. See, generally, United States v. Sentovich,* 677 F.2d 834 (11th Cir.1982); *U.S. v. Hughes,* 658 F.2d 317 (5th Cir.1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982).

■ First, the district judge properly ruled that the witnesses' testimony was not admissible to impeach Hackney. Rule 608(b) of Article VI ("Witnesses") of the Federal Rules of Evidence states that "[s]pecific instances of conduct of a witness, for the purpose of attacking or supporting his credibility . . . may not be proved by extrinsic evidence." Thus, Hackney's credibility could not be impeached by calling additional witnesses to testify to specific instances of conduct. *See United States v. Hoskins,* 628 F.2d 295, 297 (5th Cir.) *cert. denied,* 449 U.S. 987, 101 S.Ct. 406, 66 L.Ed.2d 249 (1980). While the district court afforded the appellants extensive latitude in their impeachment of Hackney, it correctly rejected the testimony for its stated purpose.

Second, the district court had no way of knowing that the defendants contended that Hackney furnished them the marijuana. The court cannot be faulted for failing to anticipate their defense and, hence, failing to analyze the admissibility of the evidence within the framework of the undisclosed defense. *See United States v. Garcia,* 531 F.2d at 1307. Therefore, even if the testimony might have been admissible to corroborate their defense, which we do not decide, the district court clearly did not commit plain error in refusing to allow it. "Plain error" only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings. *United States v. Chaney,* 662 F.2d 1148, 1152 (5th Cir.1981). Any possible relevance of the proffered testimony is not obvious; the decision to exclude it did not seriously affect the fairness and integrity of the Edwards' trial.

The appellants finally contend on appeal that the district court improperly failed to investigate their allegation of jury predisposition and misconduct. According to the appellants, while the jury was deliberating, an excused alternate juror informed J. Maurice Edwards that the jury had been discussing the case during the trial in violation of the court's instruction and that, because of this prior discussion, it should not take the jury long to reach a verdict. Although the defendant heard this comment before the return of the guilty verdict, it was not brought to the court's attention until the appellants filed their motion for a new trial.

It is well established that the Sixth Amendment affords every defendant the right to be tried by "an impartial jury," and that premature discussions by jurors can impinge upon that right. *See generally, Winebrenner v. United States,* 147 F.2d 322 (8th Cir.) *cert. denied,* 325 U.S. 863, 65 S.Ct. 1197, 89 L.Ed. 1983 (1945). Nevertheless, this court has not imposed a stringent duty of investigation upon a district judge under comparable circumstances. *Grooms v. Wainwright,* 610 F.2d 344 (5th Cir.), *cert. denied,* 445 U.S. 953, 100 S.Ct. 1605, 63 L.Ed.2d 789 (1980). Instead, "[t]he judge's decision whether to interrogate the jury about juror misconduct is within his sound discretion, especially when the alleged prejudice results from statements made by the jurors themselves, and not from media publicity or other outside influences." *Id.* at 347.

The district court did not abuse its discretion in refusing to interrogate the jury. The appropriate time to alert the court of the problem clearly would have been before the return of the verdict. At that point the judge could have investigated the charge, if necessary, and taken curative action as might be appropriate under the circumstances. The defendant learned of the problem at a stage in the proceedings when some corrective action might have been suitable. However, the defendant cannot wait to hear the verdict before contesting the impartiality of the jury and then attack the court's refusal to investigate his allegation.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.