[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 16-17653; 16-17753

_____

D.C. Docket No. 2:15-cr-00511-KKD-GMB-3

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TREMANE D. CARTHEN,
SCOTTIE JEROMA GROCE,

Defendant - Appellants.

_____

Appeals from the United States District Court
for the Middle District of Alabama

_____

(October 25, 2018)

Before WILLIAM PRYOR, MARTIN, and BALDOCK,* Circuit Judges.

MARTIN, Circuit Judge:

_____

    * Honorable Bobby R. Baldock, Senior United States Circuit Judge for the Tenth Circuit,
sitting by designation.

Tremane Carthen and Scottie Groce were tried and convicted by a jury on multiple counts of federal robbery and firearm offenses.  The government's key witness at trial was their alleged coconspirator, who agreed to testify after entering a guilty plea.  The District Court sentenced Mr. Carthen and Mr. Groce to the mandatory minimum of fifty-seven years, plus one month in prison.  In these consolidated criminal appeals, both men challenge their convictions and sentences.  Their appeals raise claims about the sufficiency of the evidence to support the jury's guilty verdict, the admission and exclusion of evidence relating to the testimony of the alleged coconspirator, and the constitutionality of their fifty-seven-year mandatory sentence.  After careful review, and having the benefit of oral argument, we affirm the convictions and sentences of both men.

## I.  BACKGROUND

In November 2015, a grand jury indicted Mr. Carthen, Mr. Groce, and their friend Kevin Martin for crimes arising out of the robbery of three Alabama gas stations in July 2014.  The indictment alleged violations of the Hobbs Act, 18 U.S.C. § 1951(a), and of 18 U.S.C. § 924(c), which imposes mandatory minimum prison sentences on any person who uses or carries a firearm in the course of a crime of violence. [1]  All three men entered not guilty pleas.  Mr. Martin, however,

---

[1] Mr. Carthen was also indicted on one count of being a felon in possession of a gun under 18 U.S.C. § 922(g)(1).  He does not appeal his conviction on this charge.

2

later reached a plea agreement with the government and agreed to testify against Mr. Carthen and Mr. Groce during their trial.  In exchange, the government dismissed four of the seven charges against him.

Mr. Carthen and Mr. Groce proceeded to trial, where Mr. Martin's testimony served as the centerpiece of the government's case.  Mr. Martin testified the three of them robbed a Chevron gas station in north Elmore County, Alabama, on July 4, 2014; a Marathon gas station in Wetumpka, Alabama, on July 10, 2014; and a Chevron gas station in Prattville, Alabama, on July 14, 2014.  He said Mr. Groce planned each robbery and drove the group to the target gas stations, and that each time, Mr. Carthen wore the same black Alabama hoodie.  Mr. Martin testified Mr. Groce gave everyone gloves to wear during the robberies, and Mr. Carthen also received a shotgun, which Groce had loaded beforehand.

According to Mr. Martin, only he and Mr. Carthen went inside the first gas station in Elmore.  Both had firearms.  For the second robbery in Wetumpka, however, all three men went inside with guns.  On both occasions, at least one of them pointed a gun at a store clerk.  The group left both robberies with cash and Newport cigarettes.

The last robbery the three men committed together was the Prattville Chevron.  Mr. Martin testified he stayed in the car while Mr. Groce and Mr. Carthen went inside.  While the robbery was underway, a customer named Marie

3

Parker arrived at the station.  When she entered and approached the drink cooler, either Mr. Carthen or Mr. Groce left the back office of the station, pointed a gun towards her, and told her to lie down on the ground.

Moments later, a police officer stopped at the Chevron the men were robbing.  Mr. Martin took off in the car once he saw the officer radio for backup.  Mr. Groce chased after Mr. Martin and convinced Martin to let him into the car.  Mr. Carthen was nowhere to be found.  But both Ms. Parker and her husband, Michael Parker, testified that they saw him moments after the robbery, when he approached a picnic area near the Chevron station.  The police had directed Ms. Parker to wait there while they canvassed the crime scene, and her husband joined her shortly thereafter.  Mr. Carthen proceeded to engage the Parkers in a conversation, telling them that he "had seen what was going on from a window" in a nearby home.  Mr. Parker found this assertion suspicious because there were no residential buildings nearby.  Mr. Parker eventually permitted Mr. Carthen to use his phone to call for a ride.  Mr. Martin testified he then went to pick Mr. Carthen up.

The government called several other witnesses who were able to corroborate Mr. Martin's account.  The jury heard testimony from the gas station clerks who were present during the robberies, each of whom testified about their recollections of the robberies, sometimes with the help of the gas stations' security footage.  An

4

employee at the Prattville Chevron also testified the robbers took off with cash and cigarettes.

The government also presented physical evidence, including a shotgun, cigarette cartons, gloves, and a hoodie, all of which were discovered by officers near the Prattville Chevron. Mr. Martin testified the gloves came from Mr. Groce, the hoodie belonged to Mr. Carthen, and the shotgun was the one Groce had given Carthen. Mr. Martin also reviewed photos from the gas stations' security footage, where he identified himself, Mr. Carthen, and Mr. Groce, as well as the various firearms they carried. Finally, the government presented forensic evidence. An expert witness for the government testified she had matched Mr. Carthen's DNA to DNA found on the gloves and the hoodie "[w]ith a high degree of confidence."

At the close of the government's evidence, both Mr. Groce and Mr. Carthen moved for a judgment of acquittal, which the District Court denied. Mr. Carthen and Mr. Groce then rested their cases without presenting any evidence.

The jury convicted Mr. Carthen and Mr. Groce on all seven counts. Mr. Carthen filed a renewed motion for judgment of acquittal or, in the alternative, a motion for new trial, arguing there was insufficient evidence to support a guilty verdict. Mr. Groce filed a motion for new trial, arguing he should have been allowed to impeach Mr. Martin's testimony with testimony from other witnesses who would have shown Martin previously lied under oath. The District Court

denied both motions and sentenced Mr. Carthen and Mr. Groce to one month in prison for the four Hobbs Act counts, plus a consecutive fifty-seven years for the three § 924(c) counts, which is the mandatory minimum required by § 924(c)'s penalty scheme.

## II.  ISSUES ON DIRECT APPEAL

Mr. Carthen's appeal presents four issues: (1) whether he received ineffective assistance of counsel; (2) whether the District Court erred when it denied his motion for a judgment of acquittal; (3) whether the District Court erroneously permitted Mr. Martin to testify about hearsay statements attributed to Mr. Carthen and Mr. Groce; and (4) whether the District Court miscalculated the mandatory minimum during sentencing.  Mr. Groce's appeal presents two separate issues:  first, whether the District Court properly denied his motion for a new trial; and second, whether the mandatory minimum sentencing scheme of § 924(c), as applied to Mr. Groce, violates the Eighth Amendment.

The record before us is not sufficiently developed to review Mr. Carthen's first claim for ineffective assistance of counsel.  See United States v. Patterson, 595 F.3d 1324, 1328–29 (11th Cir. 2010).  We therefore dismiss this claim without prejudice to his ability to raise it again in a later motion under 28 U.S.C. § 2255. See id.

We now turn to the five remaining issues presented in this appeal.

6

A.  MOTION FOR JUDGMENT OF ACQUITTAL

Mr. Carthen first argues the District Court should have granted his motion for judgment of acquittal because the government failed to present sufficient evidence to support his guilty verdict.  We review de novo a district court's denial of a motion for judgment of acquittal.  United States v. Pistone, 177 F.3d 957, 958 (11th Cir. 1999) (per curiam).  We must view the evidence in the light most favorable to the government, drawing all reasonable inferences and resolving all credibility evaluations in favor of the jury's verdict.  United States v. Descent, 292 F.3d 703, 706 (11th Cir. 2002) (per curiam).  "To uphold the denial of a [motion for judgment of acquittal], we need only determine that a reasonable fact-finder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt."  Id. (quotation marks omitted).

A reasonable fact-finder could conclude the government's evidence here established beyond a reasonable doubt that Mr. Carthen conspired to commit a robbery and voluntarily participated in the robbery with a firearm in violation of 18 U.S.C. §§ 924(c) and 1951.  Mr. and Mrs. Parker were able to identify Mr. Carthen and testified that he acted strangely when they encountered him shortly after the robbery.  According to their testimony, Mr. Carthen implausibly claimed to have watched the robbery from a nearby house.  An expert witness testified she was able to ascertain with a high degree of confidence Mr. Carthen's DNA on the pair of

7

gloves and the hoodie recovered near the scene of the robbery.  Mr. Martin explained in detail Mr. Carthen's involvement in Mr. Groce's armed robbery scheme and identified Mr. Carthen on security footage from the robbery.  Given the strength of the government's evidence, the District Court did not err when it denied Mr. Carthen's motion for a judgment of acquittal.

## B.  EVIDENTIARY RULINGS

### 1.  Coconspirator Testimony

Mr. Carthen next challenges for the first time the District Court's decision to admit various hearsay statements against him.  While we normally review evidentiary rulings for abuse of discretion, arguments raised for the first time on appeal are reviewed for plain error.  United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003).  Relying on United States v. Morrow, 537 F.2d 120 (5th Cir. 1976), Mr. Carthen argues Mr. Martin's testimony about Carthen's and Groce's statements was inadmissible under the coconspirator exception to hearsay because there was insufficient independent evidence connecting Carthen to the conspiracy.  But Morrow, which concerned a 1974 trial, does not control here.  See id. at 125.  Under the Federal Rules of Evidence enacted in 1975, a court need not find that a preponderance of the evidence proves the existence of a conspiracy independently from statements in the coconspirator's testimony before the court can find the

8

coconspirator's exception to the hearsay rule applies.  Bourjaily v. United States, 483 U.S. 171, 176–81, 107 S. Ct. 2775, 2779–82 (1987).

Also under the Federal Rules of Evidence a statement is not hearsay if it is "offered against an opposing party" and it "was made by the party's coconspirator during and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2)(E).  A court may admit evidence under Rule 801(d)(2)(E) if the government "prove[s] by a preponderance of the evidence that: (1) a conspiracy existed; (2) the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) the statement was made during the course and in furtherance of the conspiracy."  United States v. Harris, 886 F.3d 1120, 1130 (11th Cir. 2018) (quotation marks omitted).  When determining whether these elements have been satisfied, "the district court may rely on information provided by the co-conspirator's proffered statement as well as independent external evidence."  United States v. Miles, 290 F.3d 1341, 1351 (11th Cir. 2002) (emphasis added).  Here, the evidence confirming Mr. Martin's testimony about the conspiracy involving Mr. Carthen included the pattern of the robberies, the hoodie with Carthen's DNA that was visible on the gas stations' security footage, and the identification of the two witnesses placing Carthen near the last robbery soon after it occurred.  As a result, the District Court did not plainly err in finding enough

9

evidence of a conspiracy under Rule 801(d)(2)(E) to admit Mr. Martin's testimony about Carthen's and Groce's statements.

## 2. Exclusion of Impeachment Testimony

Mr. Groce's evidentiary argument concerns an issue that came up more than once in the District Court. That is the admissibility of Groce's proposed evidence to impeach Mr. Martin's testimony. During a pretrial hearing, Mr. Groce's counsel laid out a two-part trial plan to show Mr. Martin had previously lied under oath. First, on cross-examination he would ask Mr. Martin if he had ever perjured himself or lied under oath before. If Mr. Martin answered in the negative, Mr. Groce's counsel would call two witnesses to rebut Martin's denial. One of the proposed witnesses was a man acquitted of murder after a trial where Mr. Martin had testified for the government. The other was a law enforcement officer who, at a suppression hearing, had given testimony that the presiding magistrate judge found more credible than Mr. Martin's testimony on the same subject.

The District Court ruled Mr. Groce's counsel could ask Mr. Martin the perjury question, but excluded the testimony of the two witnesses under Federal Rule of Evidence 608(b). Mr. Groce argues the District Court erred when it excluded the evidence under Rule 608(b), because his proposed witnesses' testimony was admissible "to show a bias and for impeachment of a witness with

10

admissible and relevant evidence."  Mr. Groce further argues the District Court's incorrect ruling on this matter prejudiced him.

We conclude the District Court did not abuse its discretion when it denied Mr. Groce's two witnesses permission to testify.[2]  See United States v. Wilk, 572 F.3d 1229, 1234–35 (11th Cir. 2009).

Rule 608(b) provides that extrinsic evidence other than a criminal conviction "is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."  We agree with the District Court that Mr. Groce has not demonstrated his proposed evidence had some purpose other than showing Mr. Martin is generally willing to lie under oath. Though Mr. Groce invokes impeachment by specific contradiction, he admits on appeal he wished to call his two witnesses in order to show Mr. Martin had a "bias for lying against other defendants and in court proceedings for his own benefit," and "a propensity to lie in judicial proceedings."  Using past conduct to suggest a witness has a generally dishonest character is precisely what Rule 608(b) does not allow.  For this reason, the District Court did not abuse its discretion in excluding Mr. Groce's proposed impeachment evidence.

---

[2] At oral argument, the parties disagreed over whether Mr. Groce had sufficiently argued to the District Court that his witnesses' testimony should be admitted as evidence of Mr. Martin's bias.  The government, maintaining Mr. Groce had not, urged us to review his bias argument for plain error.  Because Mr. Groce's bias argument is unavailing even under an abuse of discretion standard, we need not decide this issue.

11

C.  MANDATORY MINIMUM SENTENCING SCHEME

The last issue presented by both Mr. Carthen and Mr. Groce concerns the application of § 924(c)'s mandatory minimum sentencing scheme in their cases. This scheme has several basic requirements.  Defendants convicted of brandishing a firearm in furtherance of a crime of violence under § 924(c) are subject to a minimum sentence of seven years in prison on their first conviction, 18 U.S.C. § 924(c)(1)(A)(ii), and to a minimum sentence of twenty-five years in prison for every conviction after that, id. § 924(c)(1)(C)(i).  These sentences may not run concurrently with each other or with any other prison sentence.  Id. § 924(c)(1)(D)(ii).  Because Mr. Carthen and Mr. Groce were each convicted of three counts under § 924(c) for brandishing a firearm in furtherance of a Hobbs Act robbery,[3] the District Court calculated they were subject to the following mandatory minimum prison sentences: one sentence of seven years and two sentences of twenty-five years, or a total of fifty-seven years, on the § 924(c) counts.  The District Court sentenced them each to this minimum.

Mr. Carthen disputes the District Court's calculation.  He correctly notes the twenty-five-year minimum sentence only applies to "second or subsequent conviction[s]." 18 U.S.C. § 924(c)(1)(C)(i).  But he incorrectly argues he did not

---

[3] We have previously held a Hobbs Act robbery "qualifies as a crime of violence under § 924(c)(3)(A)'s use-of-force clause."  United States v. St. Hubert, 883 F.3d 1319, 1328 (11th Cir. 2018).

12

receive any "second or subsequent conviction" within the meaning of the statute because his three convictions "stem[med] from the same incident." This argument is foreclosed by binding precedent. See United States v. Bowers, 811 F.3d 412, 430 n.12 (11th Cir. 2016) ("This Court previously held, and the Supreme Court later confirmed, that additional § 924(c) counts charged in the same indictment are second and subsequent for the purposes of § 924(c)(1)(A)(ii)."). The District Court therefore did not miscalculate the mandatory minimum sentence.

Instead of the arithmetic of his sentence under the statute, Mr. Groce challenges the proportionality of his sentence under the Eighth Amendment. We review de novo the constitutionality of a sentence. United States v. Flores, 572 F.3d 1254, 1268 (11th Cir. 2009) (per curiam).

The Eighth Amendment's prohibition of cruel and unusual punishments "contains a narrow proportionality principle that applies to noncapital sentences." United States v. Johnson, 451 F.3d 1239, 1242 (11th Cir. 2006) (quotation marks omitted). Defendants arguing that their sentences are constitutionally excessive must make a threshold showing of gross disproportionality. Id. at 1243. Yet Mr. Groce does little more than contrast the sentence he received under § 924(c) with what he says is the recommended sentence range he would have received under the United States Sentencing Guidelines, which is between 108 and 135 months. His actual sentence of fifty-

seven years, or 684 months, is about five to six times greater than the guideline range.

However, as mentioned in the government's brief, this Court upheld in Bowers a mandatory minimum sentence of 182 years, imposed under § 924(c), for brandishing a firearm during eight robberies. 811 F.3d at 433. While acknowledging the mandatory minimum was over ten times the recommended guideline range, this Court held the mandatory minimum was not a grossly disproportionate punishment considering the circumstances of that case. Id. at 432–33. Because Mr. Groce has not attempted to distinguish Bowers despite having the opportunity to do so in his reply brief and at oral argument, we can only compare this case and Bowers by looking at the ratios between the defendants' actual sentences and their guideline ranges in each case. That comparison does not favor Mr. Groce's position. As a result, we conclude Mr. Groce has failed to make a threshold showing of gross disproportionality.

**AFFIRMED**.

14

WILLIAM PRYOR, Circuit Judge, concurring:

I join the panel's opinion in full. I write separately to explain that our precedents interpreting Federal Rule of Evidence 608(b) to prohibit impeachment by contradiction are irreconcilable with the current text of that Rule. "Impeachment by contradiction occurs when a party offers evidence to prove that a fact to which a witness testified is not true." 27 Charles Alan Wright et al., *Federal Practice and Procedure* § 6096 (2d ed. 2007). But the current version of Rule 608(b) regulates the admission of evidence of a witness's character for truthfulness or untruthfulness, not impeachment by contradiction. When an appeal that requires us to decide the issue comes before us, we should rule that the 2003 amendment to Rule 608(b) abrogated our earlier precedents.

Our precedents have interpreted Rule 608(b) as adopting the common-law rule that "a witness may not be impeached by producing extrinsic evidence of 'collateral' facts 'contradicting' the first witness's assertions about those facts." 1 *McCormick on Evidence* § 45 (Kenneth S. Broun ed., 7th ed. 2013). In *United States v. Edwards*, 696 F.2d 1277 (11th Cir. 1983), we held that Rule 608(b) prohibits this tactic. *Id.* at 1281. We affirmed a ruling excluding evidence proffered for the purpose of "contradict[ing]" a witness's "stated motive for working for the DEA" and "denial of involvement in drugs." *Id.* And our later decisions made clear that the holding of *Edwards*—consistent with the collateral-issue rule of the

15

common law—does not "stand as a bar to the admission of evidence introduced to contradict, and which the jury might find disproves, a witness's testimony as to a material issue of the case." *United States v. Cardenas*, 895 F.2d 1338, 1345 (11th Cir. 1990) (quoting *United States v. Opager*, 589 F.2d 799, 803 (5th Cir. 1979)); *see also United States v. Costa*, 947 F.2d 919, 925 (11th Cir. 1991); *United States v. Cousins*, 842 F.2d 1245, 1249 (11th Cir. 1988); *United States v. Calle*, 822 F.2d 1016, 1021 (11th Cir. 1987).

Our precedents comported with the former text of Rule 608(b), which stated that "[s]pecific instances of conduct of a witness, for the purpose of attacking or supporting his *credibility* . . . may not be proved by extrinsic evidence." *Edwards*, 696 F.2d at 1281 (alterations in original) (emphasis added). This formulation of the Rule prohibited any use of extrinsic evidence of a witness's conduct to attack a witness's credibility. That prohibition arguably included evidence offered to prove that a witness testified falsely in an earlier proceeding.

In 2003, Rule 608(b) was amended to substitute the phrase "character for truthfulness" for the word "credibility," so that the Rule now provides that, "[e]xcept for a criminal conviction, . . . extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's *character for truthfulness*." Fed. R. Evid. 608(b) (emphasis added). The purpose of this amendment was "to clarify that the absolute prohibition on

16

extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness." Fed. R. Evid. 608 advisory committee's note to 2003 amendments. "[T]he amendment leaves the admissibility of extrinsic evidence offered for other grounds of impeachment (such as contradiction, prior inconsistent statement, bias and mental capacity) to Rules 402 and 403." *Id*.

As the committee notes suggest, the current text of Rule 608(b) provides no general ban on impeachment by contradiction. "The literal language" of the current version of Rule 608(b) establishes that "extrinsic evidence is inadmissible only if offered for the purpose of proving character for truthfulness or untruthfulness." Wright et al., *supra*, § 6119. The text does not speak to related uses of the same evidence, even those that will almost always have a collateral impact on the jury's assessment of a witness's character for truthfulness, such as evidence introduced for impeachment by contradiction.

The current rule does not reach impeachment by contradiction, which characteristically attempts to prove that a witness *lied*, not that he is a *liar*. Reading Rule 608(b) to exclude extrinsic proof of witness conduct to challenge a witness's credibility in any way, as we did in *Edwards*, would effectively read the words "in order to attack or support the witness's character for truthfulness" out of the text of the Rule by prohibiting extrinsic evidence that *affects* a jury's assessment of the

17

witness's character for truthfulness, even if the evidence was not introduced *in order to* attack the witness's character. This reading is untenable because it would violate the surplusage canon, which "directs us to give effect to 'every word and every provision' of a statute." *United States v. Obando*, 891 F.3d 929, 936 (11th Cir. 2018) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 26, at 174 (2012)).

We should follow the approach of the majority of the circuits. The overwhelming majority of our sister circuits have held that Rule 608(b) does not prohibit impeachment by contradiction. *See, e.g.*, *United States v. McGill*, 815 F.3d 846, 907 (D.C. Cir. 2016); *Morgan v. Covington Twp.*, 648 F.3d 172, 179 (3d Cir. 2011); *United States v. Ramirez*, 609 F.3d 495, 499 (2d Cir. 2010); *United States v. McGee*, 408 F.3d 966, 981–82 (7th Cir. 2005); *United States v. Akpan*, 407 F.3d 360, 373–74 (5th Cir. 2005); *United States v. Perez-Perez*, 72 F.3d 224, 227 (1st Cir. 1995); *United States v. Higa*, 55 F.3d 448, 451–52 (9th Cir. 1995); *United States v. Fleming*, 19 F.3d 1325, 1331 (10th Cir. 1994). With the exception of the Sixth Circuit, *see United States v. Scott*, 693 F.3d 715, 721–22 (6th Cir. 2012), the only circuits that have concluded otherwise in precedential opinions did so before the adoption of the 2003 amendment. *See United States v. Goings*, 313 F.3d 423, 427 (8th Cir. 2002); *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 530 (4th Cir. 1985). We should recognize that the gloss on the Rule that we offered

18

in *Edwards* is inconsistent with the text of the post-2003 Rule when the opportunity to do so presents itself.

For related reasons, our statements that the Rule limits the use of extrinsic evidence to "contradict[ing] . . . a witness's testimony as to a material issue of the case," *Cardenas*, 895 F.2d at 1345 (quoting *Opager*, 589 F.2d at 803), are also incompatible with the post-2003 text of Rule 608(b). The Rule does not speak to anything other than the use of extrinsic evidence to support or attack a witness's character for truthfulness. And the constraint we recognized in *Cardenas* derives from the collateral-issue rule of the common law. But as the Supreme Court has explained, "[i]n principle, under the Federal Rules no common law of evidence remains." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993) (citation and internal quotation marks omitted). "[W]hen the Federal Rules are silent about a common-law restriction on the admission of logically relevant evidence, the Rules impliedly abolish the restriction." Edward J. Imwinkelried, *Formalism Versus Pragmatism in Evidence*, 48 Creighton L. Rev. 213, 221 (2015).

Rule 608(b) imposes only one constraint on extrinsic evidence: that it cannot be used to attack or support a witness's character for truthfulness. Immateriality does not cause evidence to fall within the ambit of this prohibition. As several of our sister circuits have recognized, Rule 608(b) "does not apply . . . when extrinsic evidence is used to show that a statement made . . . on direct examination is false,

even if the statement is about a collateral issue." *Fleming*, 19 F.3d at 1331; *see also Morgan*, 648 F.3d at 179–80; *United States v. Fonseca*, 435 F.3d 369, 375 (D.C. Cir. 2006).

Of course, that Rule 608(b) does not itself bar impeachment evidence relevant only to a collateral issue does not mean that such evidence is always or even presumptively admissible. Impeachment by contradiction often threatens to "utterly destroy[]" "the purpose of Rule 608(b)" by permitting a party to mount a *de facto* attack on a witness's character for truth. Wright et al., *supra*, § 6119. When this threat arises, there is a serious risk of "undue consumption of time entailed in the presentation of the extrinsic evidence" and a "danger that the jurors's consideration of the extrinsic credibility evidence will distract them from the historical merits." Imwinkelried, *Formalism Versus Pragmatism*, *supra*, at 234. Because of this problem, "[w]hen extrinsic evidence offered to contradict undermines the[] purposes of Rule 608(b), that evidence becomes a strong candidate for exclusion under Rule 403," especially when the evidence is not otherwise "admissible to prove facts pertinent to other issues in the case." Wright et al., *supra*, § 6119. So although Rule 608(b) does not limit the use of extrinsic evidence in impeachment by contradiction to "material issue[s] of the case," *Cardenas*, 895 F.2d at 1345 (quoting *Opager*, 589 F.3d at 803), a district court

20

could exclude extrinsic evidence used to impeach a witness on a collateral issue for its risk of "confusing the issues" or "wasting time." Fed. R. Evid. 403.

The Federal Rules of Evidence often prohibit the introduction of evidence for one purpose while permitting the introduction of the same evidence for a different purpose. *See, e.g.*, Fed. R. Evid. 404(b) (prohibiting prior bad act evidence to prove propensity, but not "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"); Fed. R. Evid. 407 (prohibiting evidence of subsequent remedial measures to prove negligence, culpable conduct, a product or design defect, or a need for a warning or instruction, but not for other purposes). And there is no reason why Rule 608(b) should operate differently. As the Supreme Court has explained, "there is no rule of evidence which provides that testimony admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible." *United States v. Abel*, 469 U.S. 45, 56 (1984). "It would be a strange rule of law which held that relevant, competent evidence which tended to show bias on the part of a witness was nonetheless inadmissible because it also tended to show that the witness was a liar." *Id.* Similarly, evidence that tends to prove that a witness is not telling the truth on the stand should not be inadmissible because it incidentally tends to prove that he is a liar.

21

Extrinsic evidence offered to prove specific instances of witness conduct should be assessed under Rule 403 unless the evidence in question is offered to support or attack a witness's character for truthfulness. Rule 608(b) does not govern the admission of extrinsic evidence for any other purpose. For the reasons explained by the majority, this appeal does not present an opportunity for us to adopt this reading of Rule 608(b) as our holding. But in a future appeal that requires us to resolve the question whether our precedents interpreting Rule 608(b) remain valid, we should recognize that our precedents interpreting the Rule to establish a categorical prohibition on impeachment by contradiction or to impose a materiality constraint on that tactic were abrogated by the 2003 amendment.