[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 19-15060

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AUDRA MABEL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:19-cr-00068-RBD-DCI-1

_____

Before JILL PRYOR, BRANCH, and LAGOA, Circuit Judges.

PER CURIAM:

In the summer of 2017, Audra Mabel made eight videos in which she depicted her toddler son lasciviously, including posing him naked and fondling his penis. She also made sexually explicit videos featuring herself at her job as a first-grade teacher. She did this to please her then-boyfriend, Justin Ritchie, who she knew was sexually attracted to children.

In May of 2018, Mabel terminated the relationship with Ritchie because he would not leave his wife. In the Spring of 2019, Central Florida police arrested Ritchie after Ritchie's wife, Sarah Ritchie, called the police after discovering that Richie had sexually assaulted their daughter. Pursuant to a warrant, the police seized Ritchie's digital devices and found the videos Mabel recorded and sent him. Days later, the police arrested Mabel. Richie's wife was also arrested for engaging in the distribution of child pornography herself.

Mabel was charged with one count of sexual exploitation of a child and one count of distributing child pornography. Mabel entered into a plea agreement with the government and pleaded guilty to only the count of sexual exploitation. The plea agreement contained a waiver of appeal. Mabel's guidelines range for sentencing was life imprisonment, but the statutory maximum was thirty years. After considering a multitude of factors, includ-

ing the heinousness of the crime and Mabel's own mitigating circumstances, the district court sentenced her to 262 months' imprisonment.

On appeal, Mabel argues her sentence violates both the Eighth Amendment, because it is grossly disproportional to the sentence imposed on Ritchie's wife, and the Sixth Amendment, because her attorney failed to argue certain mitigating factors. For the reasons discussed below, we affirm.

## I.     RELEVANT BACKGROUND

Sometime in early 2017, Mabel, who lived in Michigan, began a romantic relationship with Justin Ritchie, a married man with children living in Florida. Mabel, a first-grade teacher, knew that Ritchie was sexually interested in children.

Beginning in or about May 2017, Mabel began sexually exploiting her two-year-old son, MV1,[1] to create videos for Ritchie. Over the course of about two months, Mabel created at least eight videos exploiting MV1:

> a) 844.mov is 48 seconds long and consist[s] of a close up of [MV1]'s penis while Mabel manipulates the child's penis until it becomes erect. The video continues for several seconds focused on the child's erect penis.

---

[1] Names and identifying details of all minors are omitted throughout to preserve anonymity. The pseudonyms are consistent with the Presentence Report ("PSR") and factual statement appended to the guilty plea.

b) 845.mov is 13 seconds long and consist[s] of a close up of [MV1]'s penis.

c) 846.mov is 18 seconds long and consist[s] of a close up of [MV1]'s penis, while Mabel applies ointment to the child's penis.

d) 847.mov is 43 seconds long and consist[s] of a close up of [MV1]'s penis while the child bathes with Mabel who is also naked.

e) 848.mov . . . is 36 seconds long and consist[s] of a close up of [MV1]'s penis.  The child is shown fondling his penis while Mabel talks to him.

f) 84b.mov is 53 seconds long and consist[s] of a close up of [MV1]'s penis while Mabel lactates onto the child's penis and genital area.  Mabel's exposed breast is shown in the video.

g) 84a.mov is five seconds long and consists of a close up of [MV1]'s penis.

h) 849.mov is 43 seconds long and consists of a close up of [MV1]'s penis while Mabel talks and taps on the child's thigh.

Ritchie saved the videos to his iPhone on July 25, 2017.

Around the same time, Mabel also made at least seven explicit videos for Ritchie featuring herself:

a) 84c.mov is two minutes and 56 seconds long. This video consists of Mabel masturbating with a phallic device.  Approximately one minute into the video Mabel is seen breast feeding [MV1].  Mabel

continues to masturbate while the child [is] lying on top of her breast.

b) 84d.mov is a video produced inside the school where Mabel worked as a first-grade teacher in Lansing, Michigan. In that video, Mabel used her iPhone to record her exposed vagina from underneath her skirt. Mabel then pulled the iPhone from under her skirt and focused the camera on her face. Mabel then turned the camera and focused the camera on a classroom of what appears to be first graders who were in her immediate vicinity. Mabel engaged several children in conversation and recorded the children while she talked to them.

c) 8c7.mov, 8cc.mov, 8c9.mov, and 8ca.mov are four separate videos that range from 11 seconds to 35 seconds long. These videos consist of Mabel masturbating on June 8, 2017, with a popsicle while in the elementary school restroom.[2]

d) 8cd.mov is 34 seconds long and consist of Mabel masturbating with a cupcake while in the elementary school restroom.

Around October of 2017, Mabel relocated from Michigan to live with her father in Casselberry, Florida. Shortly afterwards, Mabel recorded a video of herself masturbating and talking to Ritchie, verbally fantasizing about engaging Ritchie's minor

---

[2] Mabel returned the popsicles to their box and later filmed herself giving popsicles of the same colors to her students.

daughter, CV1, in sexual activity.  She and Ritchie would sometimes incorporate role-play and fantasies of child sex abuse into their sexual relations, at times using the names of Ritchie's children.

Mabel terminated the relationship at some point in 2018 because Ritchie would not leave his wife.  According to Mabel, the last time she saw Ritchie was May 2018.

On March 5, 2019, Ritchie's wife called the Sanford Police Department and reported that her daughter, CV1, disclosed to her that Ritchie had touched and licked her vulva.  Ritchie's wife knew that Ritchie was a pedophile for at least a year, including that he viewed child pornography and had naked images of a child that she knew.

On March 8, 2019, the Sanford Police Department arrested Ritchie in Seminole County, Florida, and, pursuant to a warrant, seized Ritchie's digital devices and conducted a search.  On Ritchie's iPhone they found: (1) thirty-nine videos depicting Ritchie sexually exploiting three prepubescent children from January 2017 to March 2, 2019; (2) text communications in which Ritchie distributed thirteen images of child pornography to Ritchie's wife in June 2018; and (3) the videos created by Mabel described above.

On March 13, 2019, law enforcement officers contacted Mabel at her home in Seminole County.  After waiving her *Miranda* rights, she admitted to recording the pornographic videos.

In April 2019, a grand jury indicted Mabel on one count of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a), (e) and 18 U.S.C. § 2, and one count of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), (b)(1) and 18 U.S.C. § 2.

On July 3, 2019, Mabel pleaded guilty to count one, sexual exploitation of a minor. She admitted to sexually exploiting MV1, as described above. She also waived any right to appeal, except as to: "(a) the ground that the sentence exceeds the defendant's applicable guidelines range . . . ; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution," unless the government appealed first. In exchange, the government dropped the child pornography count and agreed to consider her assistance to the prosecution when recommending a sentence.

The PSR calculated the guidelines range for Mabel's sentence. The base offense level for sexual exploitation of a child is thirty-two. That was enhanced by four because MV1 was younger than twelve years old, and by another four because it portrayed an infant or toddler. To that forty was added another two for each of: 1) the offense involved a sexual act; 2) Mabel knowingly distributed it; and 3) Mabel was MV1's parent. Next, that forty-six was enhanced by five, because Mabel committed eight individual instances of the offense, and another five, because she engaged in a pattern of behavior, for a total of fifty-six. Mabel accepted re-

sponsibility and aided the authorities, which reduced the sentence by three. As a result, her total offense level was fifty-three. That was reduced to forty-three because that is the maximum level an offense can reach, pursuant to U.S.S.G. § 5A, comment 2. For any criminal history category, that level would equate to life imprisonment. However, 18 U.S.C. § 2251(a) and (e) create a statutory range of 15 to 30 years' imprisonment. Consequently, the guidelines range was the maximum statutory term of imprisonment: thirty years, or 360 months.

On October 21, 2019, during the sentencing hearing, the district court judge explained in open court that he

> found [him]self struggling with how to properly characterize adequately the depth of depravity that would explain a mother utilizing her own child in order to gratify the deviant sexual desires of a casual boyfriend . . . [and] struggled mightily to try and understand how to fashion a sentence that would adequately encompass . . . encouraging . . . a man sexually abusing his own child, this from a mother and a first grade teacher.

The district court, however, noted that Mabel took responsibility, that she showed "remarkable insight and remorse," that she was "subject to manipulation by a truly evil man," that the letters and appearances showed her family support and the body of work over her life, that the behavior was aberrant, and that an expert witness testified that she had "no sexual interest in children." Ultimately, the district court determined that 262 months' impris-

onment was a sentence that was sufficient but not greater than necessary to achieve the statutory purposes of sentencing.

This appeal ensued, and in response, the government filed a motion to dismiss the appeal based on Mabel's sentencing appeal waiver.

## II.    STANDARD OF REVIEW

We review the validity of a sentence appeal waiver *de novo*. *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008). We also review the constitutionality of a sentence *de novo*. *United States v. Carthen*, 906 F.3d 1315, 1322 (11th Cir. 2018). Where a defendant fails to challenge the constitutionality of a sentence before the district court, however, on appeal we will review only for plain error. *See United States v. Raad*, 406 F.3d 1322, 1323 (11th Cir. 2005) (per curiam).

## III.    ANALYSIS

On appeal, Mabel raises two arguments. First, Mabel contends that her sentence violates the Eighth Amendment because it is "grossly disproportionate to the sentence imposed on the more culpable co-defendant, Sarah Ritchie." Second, Mabel argues that defense counsel deprived "Mabel of her Sixth Amendment right to effective assistance of counsel during sentencing by failing to argue obvious grounds for a lighter sentence." We consider these arguments in turn.

### A. Mabel's Eighth Amendment Argument

We first address Mabel's Eighth Amendment argument. The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments." A defendant can show that a sentence is so disproportionate as to be cruel and unusual using a two-step framework. First, the defendant must make a threshold showing that the sentence is "grossly disproportionate to the offense committed." *United States v. Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006) (per curiam) (quoting *Raad*, 406 F.3d at 1324). Second, a reviewing court may then look to "sentences imposed on other criminals in the same jurisdiction" and "sentences imposed . . . in other jurisdictions." *United States v. Brant*, 62 F.3d 367, 368 (11th Cir. 1995) (per curiam).

But here, Mabel is silent at step one; she argues that her sentence is grossly disproportionate to another defendant, *not* to the offense committed. *See United States v. Bushert*, 997 F.2d 1343, 1355 (11th Cir. 1993) ("[C]hallenges to sentencing because a co-defendant received a less severe penalty are 'frivolous.'" (quoting *United States v. Hendrieth*, 922 F.2d 748, 752 (11th Cir.1991))). Moreover, Mabel cannot show that her sentence is grossly disproportionate with the offense committed, given the heinous nature of her crime and the fact that she was sentenced to about eight years less than the guidelines recommended. We therefore conclude that her sentence does not violate the Eighth Amendment.

### B. Mabel's Sixth Amendment Argument.

#### i.    *Mabel's Waiver Was Valid.*

A sentence appeal waiver will be enforced if it was "made knowingly and voluntarily." *Johnson*, 541 F.3d at 1066. This can be shown either directly, if "the district court specifically questioned the defendant concerning the sentence appeal waiver during the [plea] colloquy," or indirectly, if "it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *Bushert*, 997 F.2d at 1351.

Here, Mabel's waiver falls into the direct category. At the plea hearing, the magistrate engaged in the following plea colloquy with Mabel:

> THE COURT: [Y]ou agree the Court has jurisdiction and can sentence you up to the maximum allowed by law, the statutory maximum. You also waive your right to appeal your sentence on any ground including that the district judge made a mistake in calculating your sentencing guidelines range. Normally a defendant convicted of an offense can appeal their sentence on any ground. You're waiving your right to appeal your sentence except on four narrow grounds. First, you can appeal your sentence if it exceeds the guidelines range the district judge determines. Second, you can appeal your sentence if it exceeds the statutory maximum. Third, you can appeal your sentence if it violates the Eighth Amendment to the United States Constitution. And

> fourth, if the Government appeals, you can appeal as well.  Do you understand what you're giving up there?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Any questions for me about the sentence appeal waiver?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Any of the particular provisions you'd like me to go over, Ms. Gable?
>
> MS. GABLE: No, Your Honor.
>
> . . . .
>
> THE COURT: Do you understand everything we discussed up to this point, including your rights, the rights you give up by pleading guilty, the charge against you, the potential penalties and consequences, the sentencing guidelines, and your plea agreement?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Let me ask you directly, then. How do you plead, guilty or not guilty, to count one of the Indictment?
>
> THE DEFENDANT: Guilty.

Because Mabel's plea was knowing and voluntary, it is enforceable.  We therefore now turn to whether Mabel has waived this argument.

Specifically, Mabel's plea agreement waived her right to appeal nearly all issues.  The provision at issue stated that:

> The defendant . . . expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range *as determined by the Court* pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Based on this explicit provision, there are four—and only four—valid grounds upon which Mabel can appeal.  A Sixth Amendment violation at sentencing is not one of them.[3]

---

[3] Importantly, this is not a case where the defendant alleges ineffective assistance of counsel regarding the *voluntariness* of the waiver, which "goes to the heart of whether the guilty plea, including the waiver of appeal, is enforceable." *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1285 (11th Cir. 2015) (alteration adopted) (quoting *United States v. Portillo–Cano*, 192 F.3d 1246, 1250 (9th Cir.1999)); *see also id.* at 1284 ("If the agreement is involuntary, or otherwise unenforceable, then the defendant is entitled to appeal." (quoting *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir.1995))).  Rather,

Mabel raises two counterarguments seeking to avoid the natural reading of the waiver. First, she argues that it is not waived because the appeal waiver only applies to challenging a "sentence," not to challenging the assistance of counsel at sentencing. But her own argument asserts that counsel was ineffective by "failing to argue obvious grounds for a lighter sentence." It strains credulity to say that this is not an appeal of her sentence under the guise of ineffective assistance of counsel. Moreover, we have held ineffective assistance of counsel claims waived in the past.[4] *See United States v. Hanlon*, 694 F. App'x 758, 759 (11th Cir. 2017) ("Hanlon's sentence appeal waiver bars his sentence claims and his claims that his trial counsel was ineffective at sentencing").

Second, Mabel argues that holding ineffective assistance of counsel claims waived "trivializ[es] Ms. Mabel's Sixth Amendment right to effective assistance of counsel at 'the most critical stage of criminal proceedings' as explicitly guaranteed by the Constitution." On the contrary, "[t]he preferred means for deciding a claim of ineffective assistance of counsel is through a 28

---

Mabel's argument here is "an indirect challenge to [her] sentence." *United States v. Hanlon*, 694 F. App'x 758, 759 (11th Cir. 2017).

[4] We are also mindful that "a contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005).

U.S.C. § 2255 motion 'even if the record contains some indication of deficiencies in counsel's performance,'" *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010) (quoting *Massaro v. United States*, 538 U.S. 500, 504 (2003)), because it is important that "the district court . . . entertain the claim [and] develop a factual record," *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002).

Because Mabel's plea was knowing and voluntary, it is enforceable. We therefore hold that based on this appeal waiver Mabel waived her right to appeal the issues raised and affirm Mabel's sentence.

**AFFIRMED.**