[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 22-12533

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DENNIS DEWAYNE JACKSON,
a.k.a. Jason Franklyn,
a.k.a. Franklyn666987,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 3:21-cr-00076-TJC-MCR-1

_____

Before WILSON, JORDAN, and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Dennis Dewayne Jackson appeals his total sentence of 138 months' imprisonment for receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). On appeal, Jackson argues his 138-month sentence, which is below the applicable advisory guidelines range of 151 to 188 months, is both procedurally and substantively unreasonable. Jackson also contends his sentence constitutes cruel and unusual punishment, in violation of the Eighth Amendment. After review, we affirm.

## I. BACKGROUND

### A. Offense Conduct

In March 2022, Jackson pled guilty to three counts of knowingly receiving child pornography. The following facts are drawn from Jackson's presentence investigation report ("PSI"), to which Jackson did not object.

On July 3, 2021, defendant Jackson's brother, John Jackson, Jr., invited an undercover Federal Bureau of Investigations ("FBI") agent to a private online "chat" group on "Kik Messenger" that catered to people interested in sexual activity between "daughters and daddies." The FBI agent was posing as a 14-year-old girl. Once admitted to the group, the FBI agent learned that Jackson and

his brother John were listed as its administrators. The FBI agent observed that files containing graphic videos of child pornography were regularly shared to the group's members, including some uploaded by Jackson's brother the same day the agent entered the chat group.

The next day, law enforcement searched a property where the brothers maintained separate residences. A subsequent forensic review of the cellphone of Jackson's brother John revealed that John had traded child pornography with at least five other individuals, including Jackson. Private messages between the brothers showed that Jackson had received seven videos and two images of child pornography from his brother, some of which contained prepubescent children engaging in sexually explicit conduct.

Three of these videos, all received on July 3, 2021, formed the basis for the three counts to which Jackson pled guilty. All three videos depicted adult males penetrating female minors' vaginas. In two of the videos, the minors were fully nude and prepubescent. In one of the videos, the prepubescent minor's eyes were covered with silver duct tape, and she performed oral sex on a second male.

The brothers also discussed a 15-year-old female with whom John was communicating. When Jackson asked his brother whether the female had sent him anything, John sent Jackson photographs of a young female. Jackson responded, "Yummy she need to be fuck by us both right now." Jackson also asked how old the female was, and when his brother said the female was 15 years

old and "looking for a daddy," Jackson said, "Ok see if she send any nudes."

In another private message conversation on July 1, 2021, Jackson asked to be added back to the "daughters and daddies" group, and John added Jackson back. When Jackson asked his brother, "Anything good" his brother sent "age difficult files," to which Jackson responded, "Nice." Jackson also advised his brother that he would not save any of the images "this time" and that he had to delete "700 pics and vids" previously.

During a July 22, 2021 interview with FBI agents, Jackson admitted receiving approximately 1,500 images and videos of child pornography over the last two years, as well as distributing about 70 to 80 images of child pornography. Jackson also acknowledged he was an administrator of the "daughters and daddies" chat group and that he had both sent and received child pornography using his Kik Messenger account. Jackson said he knew trading child pornography was illegal.

## B.    PSI

Jackson's PSI assigned him a base offense level of 22 under U.S.S.G. § 2G2.2(a)(2). The PSI then added: (1) two levels because his offense involved a prepubescent minor, pursuant to § 2G2.2(b)(2); (2) two levels because he knowingly engaged in distribution, pursuant to § 2G2.2(b)(3)(F); (3) four levels because the offense involved material that portrayed sadistic or masochistic conduct or other depictions of violence, or sexual abuse or

exploitation of an infant or toddler, under § 2G2.2(b)(4); (4) two levels because he used a computer, under § 2G2.2(b)(6); and (5) five levels because the offense conduct involved 600 or more images, under § 2G2.2(b)(7)(D) and note 6 to the commentary. The PSI then subtracted three levels for Jackson's acceptance of responsibility, under § 3E1.1(a) and (b), yielding a total offense level of 34.

With a criminal history category of I and a total offense level of 34, Jackson's advisory guidelines range was 151 to 188 months of imprisonment. The statutory mandatory minimum for Jackson's offenses was five years in prison, and the maximum was 20 years per count. 18 U.S.C. § 2552(a)(2), (b)(1).

The PSI noted that at the defense counsel's request, a psychologist had conducted a psychosexual evaluation of Jackson. A copy of the psychologist's report was attached to the PSI.

Among other things, the report diagnosed Jackson with generalized anxiety disorder and dependent personality disorder, suggested he was led by his brother into viewing child pornography, and opined that Jackson's recidivism risk for any sexual offense was 3.2%, and lower for a child pornography offense. According to a summary of Jackson's clinical interview, Jackson claimed that (1) he had joined chat groups to make friends, (2) his brother created the "daddies and daughters" chat group and added him as an administrator without his knowledge, (3) his brother sent him child pornography unsolicited, (4) he had told his brother to stop and deleted the images, and (5) at one point he left

the group. While Jackson admitted viewing and sharing child pornography, he claimed it was because he wanted to be part of a group and stay connected to his brother. Jackson denied being attracted to minors and said the images made him sick to his stomach.

### C.    Sentencing Hearing

At sentencing, the district court noted that it had previously sentenced Jackson's brother John. After confirming that there were no objections to the PSI, the district court adopted the PSI and found that Jackson's advisory guidelines range was 151 to 188 months.

The government requested a 168-month sentence, which was in the middle of the range. The government cited, *inter alia*, Jackson's and his brother's deep involvement in co-administrating the chat group, Jackson's careful deletion of images and videos so that they would not be found on his phone, Jackson's admission that he received about 1,500 files of child pornography over a two-year period, and the violent nature of some of the files the FBI had recovered.

The government discounted the psychologist's report, noting that the report acknowledged Jackson had minimized his conduct and may have been deceptive during his interview. The government stressed that during his interview with the psychologist, Jackson denied conduct that was established during the investigation, including his viewing of child pornography and

being an administrator of the "daddies and daughters" group.  The government also noted that Jackson gave encouraging responses to his brother's messages about a 15-year-old female.    The government argued that the psychologist's 3.2% recidivism rate was highly suspect given Jackson's deception during the interview.

Jackson requested a downward variance to the mandatory minimum sentence of 60 months.  Jackson stated that he had "no objection to the Court giving the advisory guidelines respectful consideration."  Jackson argued, however, that the guidelines were not entitled to substantial weight in light of the U.S. Sentencing Commission's report to Congress, which "shows the problem that we have in these kind[s] of cases, especially Section 2G2.2, where it doesn't help the Court to distinguish between offenders based on their relative culpability and their dangerousness."  Jackson contended the provisions of § 2G2.2 "are outdated," "concentrate most offenders at or near the statutory maximum," and fail to "distinguish between the most culpable offenders," such as Jackson's brother, and "those who committed minor offenses."

With respect to the other § 3553(a) factors, Jackson emphasized: (1) his brother's higher degree of culpability, characterizing himself as merely "a follower"; (2) his difficult childhood, which included sexual abuse by his father and a cousin, physical and emotional neglect by his parents, his removal from his parents' home by child protective services and placement with his aunt, his father's incarceration, his family's history of mental illness, and his own attempted suicide; (3) the continued support of

Jackson's wife and aunt; (4) Jackson's own expressions of remorse and a desire for rehabilitation during his allocution; (5) the lack of any prior criminal history; (6) the fact that Jackson's offense did not involve advertising, pimping, or trafficking, and there was no evidence of "deep-seated pedophilia or predatory sexual conduct"; and (7) the psychologist's opinion that his recidivism rate was only 3.2%.

### D. District Court's Sentence

After considering the § 3553(a) factors, the district court determined a downward variance was appropriate and imposed a total sentence of 138 months—13 months below the low end of the advisory guidelines range. The district court also imposed a 20-year term of supervised release and granted Jackson's request for review every five years to determine if continued supervised release is needed.

In considering the § 3553(a) factors, the district court noted that the guidelines, while helpful, were only advisory. The district court acknowledged that U.S.S.G. § 2G2.2 had faced significant critique suggesting it should be reformed. The district court agreed with Jackson that the advisory guidelines ranges calculated using § 2G2.2 tend "to skew high" because of "things that are true in all child pornography cases," such as internet or computer usage, and made "it hard to differentiate what could be considered less serious cases from the most serious type." As a result, the district court

observed that the provisions of § 2G2.2 "still need to be looked at with caution."

The district court stressed, however, that the images involved in Jackson's particular offenses portrayed "horrific physical and sexual abuse of prepubescent minors" and that it was "really beyond description how bad this material is." The district court noted that while Jackson had not created the images, he had "propagated it by his actions, not only in viewing it himself, but also being involved in these chatrooms and discussions with his brother about" the images "in an approving way." Jackson's actions also "increase[d] the victimization of the minor children" by making the images accessible in the chat group, where it was "virtually impossible to call [them] back."

The district court agreed that Jackson was less culpable than his brother John, who had "other aggravating factors" and received a statutory-maximum twenty-year sentence. As a consequence, the district court concluded Jackson should receive a lower sentence.

However, the district court also found Jackson's involvement with child pornography to be significant, pointing out that: (1) Jackson and his brother "were intertwined in some respects," both using the same chat group and talking with each other about the material found there in inappropriate and graphic terms; (2) Jackson was denominated as an administrator of the chatroom; (3) after leaving the chat group, Jackson then asked to be readmitted; (4) Jackson had admitted to being involved in the

activity for at least two years and to receiving "lots of images"; and (5) Jackson's conversations with his brother "gave some indication of interest in being hands-on with at least teenage victims."

As for Jackson's personal history and characteristics, the district court acknowledged his "terrible upbringing," including being abandoned by his parents and molested by relatives, and his later successful 15-year marriage, noting that he had been a good father to his two children and supported his disabled wife.

The district court concluded Jackson's risk of recidivism was "uncertain" and that the psychologist's "psychosexual evaluation left a lot to be desired," making it "less valuable." The district court found that Jackson was not forthright with the psychologist about the extent of his conduct, including denying activities he had admitted to FBI agents or as part of his guilty plea.

After the district court pronounced the sentence, Jackson objected to its reasonableness, without success, but did not raise any procedural errors or constitutional objections.

## II.  GENERAL PRINCIPLES

"We review the reasonableness of a sentence for [an] abuse of discretion using a two-step process." *United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014) (quotation marks omitted).  We first determine whether the sentence is procedurally reasonable. *Id.*  A sentence is procedurally unreasonable if the sentencing court commits a "significant procedural error," such as misapplying the guidelines or treating them as mandatory, failing to consider the 18

U.S.C. § 3553(a) factors, choosing a sentence based on clearly erroneous facts, or failing to adequately explain the sentence imposed. *Id.*

Second, we examine whether the sentence is substantively unreasonable in light of the § 3553(a) factors and the totality of the circumstances. *Id.* Because the weight given to any particular § 3553(a) factor is within the district court's discretion, this Court will not substitute its judgment for that of the district court. *United States v. Alvarado*, 808 F.3d 474, 496 (11th Cir. 2015). "A district court abuses its sentencing discretion if it does not consider relevant factors that were due significant weight, gives significant weight to improper or irrelevant factors, or balances the proper factors unreasonably." *United States v. Woodson*, 30 F.4th 1295, 1308 (11th Cir. 2022). We will not reverse a sentence unless "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008) (quotation marks omitted).[1]

---

[1] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational and vocational training or medical care; (6) the kinds of sentences available; (7) the

At both steps, the party challenging the sentence has the burden of showing it is unreasonable. *Alvarado*, 808 F.3d at 496. Where, as here, the appellant fails to object to a purported procedural error at sentencing, we review procedural reasonableness for plain error. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014).

## III.  PROCEDURAL REASONABLENESS

As to procedural reasonableness, Jackson argues for the first time that the district court erred when it calculated his total offense level using U.S.S.G. § 2G2.2, the guidelines applicable to non-production child pornography offenses. Jackson relies on a 2013 Sentencing Commission report to Congress criticizing and requesting authorization to amend U.S.S.G. § 2G2.2, which was promulgated by direct congressional mandate. Jackson contends § 2G2.2 is not based on empirical data and that the 2013 report essentially renders it invalid.[2]

---

Sentence Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to the victims. 18 U.S.C. § 3553(a).

[2] Despite Jackson's claims to the contrary, he did not object at sentencing to the district court's use of § 2G2.2 to calculate his total offense level. In fact, Jackson did not object to any of the district court's guidelines calculations. Although Jackson referred to the Sentencing Commission's 2013 report, he did so only to support his request for a downward variance from the advisory guidelines range he had already admitted was correctly calculated. Thus, to the extent Jackson is raising this alleged procedural error in this Court, our review is for plain error. *See Vandergrift*, 754 F.3d at 1307.

Jackson's argument concerning § 2G2.2 is squarely foreclosed by our precedent. In *Cubero*, this Court recognized that the Sentencing Commission's 2013 report is something "a district court may certainly consider . . . in choosing the ultimate sentence," but rejected the argument that the 2013 report rendered § 2G2.2 invalid or required the district court to vary downward in non-production child pornography cases. *Cubero*, 754 F.3d at 899–900. The *Cubero* Court concluded the district court's application of § 2G2.2's offense-level adjustments in non-production cases did not constitute procedural unreasonableness. *Id.*

In an effort to distinguish *Cubero*, Jackson maintains the application of § 2G2.2 in his case resulted in an "absurd sentence for a first-time offender who had no physical contact with a minor depicted in the images or videos." This argument is really about whether his sentence is substantively unreasonable. And the Court in *Cubero* concluded that the "use of § 2G2.2 as an advisory guideline" does not make the resulting sentence either "procedurally or substantively unreasonable." 754 F.3d at 900.

In any event, these facts do not distinguish *Cubero*. The defendant in *Cubero*, like Jackson here, was a first-time offender who had no contact with children. *Id.* Moreover, Cubero received a 151-month sentence, higher than Jackson's 138-month sentence. *Id.* at 892.

The district court here did consider the criticisms of § 2G2.2 in choosing to vary downward and impose a below-guidelines sentence. However, the district court was not free to disregard

§ 2G2.2 entirely in correctly calculating Jackson's total offense level and advisory guidelines range. *See id.* at 900 (stating that the 2013 report "does not alter the district court's duties to calculate the advisory guidelines range . . . ."). Jackson has not shown error, much less plain error, in the district court's use of § 2G2.2 to calculate Jackson's total offense level of 34. Nor has Jackson shown that his 138-month sentence is procedurally unreasonable.

## IV.  SUBSTANTIVE REASONABLENESS

Jackson also has not shown his 138-month sentence is substantively unreasonable. For two years, Jackson participated in the "daughters and daddies" group chat, including being designated as an administrator for the group. He admitted to both sending and receiving child pornography through the group's chatroom. Jackson estimated that he had received approximately 1,500 images and videos over that two-year period. Jackson also admitted to sending between 70 and 80 images to others. As the district court noted, some of these videos and images, including two of the videos Jackson admitted receiving as part of his guilty plea, showed adults committing acts of sexual violence against prepubescent children.

Although Jackson claimed to be a reluctant follower, his communications with his brother suggested he was a willing participant. Further, the district court found that the psychologist's opinion that Jackson presented a very low risk of recidivism was less valuable given that Jackson had not been forthright in his interview, denying and minimizing the extent of his own conduct.

In light of the seriousness of Jackson's child pornography offenses and the uncertain risk he presented of recidivism, the district court's decision not to vary downward any further and to impose a 138-month sentence was not an abuse of discretion.

Jackson takes issue with the weight the district court gave the various § 3553(a) factors, but "[t]he weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Amedeo*, 487 F.3d 823, 832 (11th Cir. 2007) (quotation marks omitted). The record shows that the district court considered Jackson's mitigating factors, including Jackson's difficult upbringing and childhood abuse, his positive role as a husband and father, his continued family support, his lack of a criminal history, his lesser culpability compared to his brother, and the tendency of § 2G2.2 to result in sentencing ranges that do not account for degrees of culpability among child pornography offenders. The district court was within its discretion to find these factors were outweighed by the need for Jackson's sentence to reflect the seriousness of Jackson's crimes, to provide just punishment, and to protect the public by deterring future criminal conduct.

Moreover, the sentence imposed was below the advisory guidelines range and almost half the statutory maximum for Jackson's offense of conviction. *See Woodson*, 30 F.4th at 1308 ("We ordinarily expect that a sentence falling within the guideline range will be reasonable, and a sentence imposed well below the statutory maximum penalty indicates reasonableness." (quotation

marks omitted)).    Jackson has not shown his sentence is substantively unreasonable.

## V.  EIGHTH AMENDMENT CLAIM

For the first time on appeal, Jackson argues his 138-month sentence constitutes cruel and unusual punishment under the Eighth Amendment.    Jackson, who was 39 at the time of sentencing, contends his 138-month sentence is "almost a life sentence" and is grossly disproportionate for a "first-time offender" convicted of "non-violent offenses."

We review for plain error an Eighth Amendment claim of cruel and unusual punishment that was not raised before the district court.  *United States v. Suarez*, 893 F.3d 1330, 1335 (11th Cir. 2018).  There can be no plain error when there is no precedent from the Supreme Court or this Court directly resolving the issue. *United States v. Moore*, 22 F.4th 1258, 1266 (11th Cir. 2022).

The Eighth Amendment prohibits the infliction of cruel and unusual punishments.  U.S. Const. amend. VIII.  While the Eighth Amendment does not require strict proportionality, it does contain a "narrow proportionality principle" that forbids noncapital sentences that are "grossly disproportionate" to the crime.  *United States v. Smith*, 967 F.3d 1196, 1214 (11th Cir. 2020) (quotation marks omitted) (noting that successful Eighth Amendment challenges to noncapital sentences are rare).

In evaluating an Eighth Amendment challenge in a non-capital case, the defendant first must make a threshold showing

that the sentence imposed is grossly disproportionate to the offense committed.  *United States v. Carthen*, 906 F.3d 1315, 1322 (11th Cir. 2018).  If the defendant makes this threshold showing of disproportionality, we will then consider the sentences imposed on other defendants in similar cases.  *United States v. Flanders*, 752 F.3d 1317, 1342 (11th Cir. 2014).

As a general rule, sentences within the statutory limits do not violate the Eighth Amendment, as we afford "substantial deference" to Congress's "broad authority to determine the types and limits of punishments for crimes."  *United States v. Johnson*, 451 F.3d 1239, 1242–43 (11th Cir. 2006) (quotation marks omitted).  Thus, a defendant sentenced within the statutory limits cannot make the required threshold-showing of gross disproportionality.  *Id.* at 1243.

Here, each of Jackson's child pornography offenses carried a statutory maximum sentence of 20 years of imprisonment.  *See* 18 U.S.C. § 2252(a)(2), (b)(1).  In other words, Jackson faced a possible maximum sentence of 60 years.  *See* 18 U.S.C. § 3584 (granting the district court discretion to run sentences concurrently or consecutively).  Yet Jackson's total 138-month sentence fell well below the statutory limit for just one of his three convictions.  It was also below his advisory guidelines range.

Under our precedent, Jackson cannot make the threshold showing of a grossly disproportionate sentence.[3] *See Johnson*, 451 F.3d at 1243. Moreover, he has not identified any precedent from this Circuit or the Supreme Court holding that a total sentence below the advisory guidelines range and well below the applicable statutory maximum violated the Eighth Amendment. Thus, Jackson has not shown his 138-month sentence was error, much less plain error, under the Eighth Amendment. *See Moore*, 22 F.4th at 1266.

**AFFIRMED.**

---

[3] Jackson cites a 2021 Sentencing Commission study indicating that the average sentence for a child pornography offense in the Middle District of Florida is 122 months, with a median of 110 months. Because Jackson failed to make a threshold showing of disproportionality, we do not consider this data. *See Johnson*, 451 F.3d at 1243 (stating that the court need not consider sentences imposed on others convicted in the same jurisdiction for the same crime if the defendant failed to make the threshold showing).